GILE and another vs. HALLOCK.

33 | 523
59 LRA | 784

CONSTITUTIONAL LAW.   (1)  *Exemption of lands under homestead act consti-*
*tutional.*

CLOUD UPON TITLE.   (2, 3)  *Relief in Equity.*

1. Section 4 of the act of congress (approved May 20, 1862), entitled "An
   act to secure homesteads to actual settlers on the public domain,"
   which provides that no lands acquired under the provisions of said
   act shall in any event become liable to the satisfaction of any debt
   contracted prior to the issuing of the patent therefor — is a valid ex-
   ercise of the power of congress over the public domain of the United
   States, granted by subd. 2, sec. 2, art. IV of the federal constitution,
   expressly reserved by the "enabling act" (App. to R. S.), and recog-
   nized in sec. 2, art. II of the state constitution.
2. Where a judgment has been obtained against one who had taken title
   to land under said act, for a debt contracted before the issue of a patent,
   and the land has been sold to satisfy such judgment, this will consti-
   tute a cloud upon the title of the judgment debtor or his grantee, to
   remove which an action will lie.
3. The rule that equity will not interfere to remove a cloud upon title
   where defendant's asserted interest in the land is void upon the face
   of the records, does not apply to such a case; the records of the
   United States land office being *foreign records*, and having, for the
   purposes of such an action, no greater effect than mere extrinsic evi-
   dence, or evidence resting wholly in parol.

APPEAL from the Circuit Court for *Clark* County.

Action to set aside a sheriff's certificate of sale of plaintiffs'
land, sold by virtue of an execution against one Smith, from
whom plaintiffs derived title. The complaint alleged that
Smith acquired his title to the land under and by virtue of
the act of congress of May 20, 1862, known as the "homestead
act." It also averred that the judgment under which the land
was sold was a debt which accrued and was contracted before
the patent issued upon the land, and that by section 53 of the
act of congress aforesaid, the land was not liable to the debt or
judgment, nor was the judgment a lien thereon in fact; and
that the judgment and certificate of sale constituted a cloud

upon plaintiffs' title.   Prayer, that the certificate be set aside
and annulled; that the judgment be declared not a lien; and
that the defendant be enjoined from transferring the judgment
or certificate, or from procuring any deed thereon.    Defendant
demurred to the complaint, as not stating a cause of action,
and appealed from an order overruling the demurrer.

*Montgomery, Tyler & Dickinson,* and *R. J. McBride,* for ap-
pellant, argued that the judgment was a valid lien upon the
land by virtue of the state laws, which must govern.    It is
true that section 53 of the act of congress of May 20, 1862, pro-
vides that "no land acquired under the provisions of this act
shall in any event become liable to the satisfaction of any debt
or debts contracted prior to the issuing of the patent therefor."
But to contend that this means that for debts contracted before
issuing the patent the land shall never be liable, is to extend
the scope of the act far beyond the legitimate powers of con-
gressional legislation prescribed by the constitution.    It is an
attempt on the part of congress to discriminate, by law, be-
tween the rights of citizens of the same state, by saying that
one citizen may own and hold 160 acres of land exempt from
payment of debts contracted before his patent issues, while
another, under the state law, can hold only 40 acres exempt.
Such power cannot be claimed for congress under subd. 2, sec.
3, article IV of the constitution, since that only authorizes
congress to "dispose of and make all needful rules and regula-
tions respecting the territory or other property *belonging* to the
United States," and not to say what shall become of the public
land, or what it shall be and shall not be liable for after the
government has disposed of it.    After the general government
has thus disposed of the land, it is for the state to regulate the
rights of its citizens in relation thereto.    2. Again, the facts
stated in the complaint do not show such a cloud upon plaint-
iff's title as to warrant a court of equity in interfering to set it
aside or remove it, since the defects alleged by plaintiffs are
apparent upon the face of the records upon which defendant's

title depends.    Hence, if the construction of the 53d section of the homestead act contended for by plaintiffs were correct, equity would not interfere in such a case as this.    Story's Eq., 700; 5 Ves., 293; 6 Peters, 95–100; 28 Wis., 593.    "The rule upon this subject assumes always that the title of the party complaining, being shown as it appears of record, then the cloud to be removed is apparently a good title against it, though really defective by reason of something not appearing upon the record."    *Moore v. Cord,* 14 Wis., 213 ; *Shepardson v. Supervisors,* 28 id., 593 ; *Head v. James,* 13 id., 641.

*M. P. Wing and G. C. Prentiss,* for respondents, argued that the land sold was exempt from the judgment debt, because it was homestead land, entered and purchased as such under the laws of the United States, and the debt accrued prior to issuing the patent.    Act of congress, May 20, 1862 (U. S. Stats. at Large, Vol. 12, p. 392, sec. 4).    Article VI, sec. 2 of the constitution of the United States provides that " The constitution and the laws made in pursuance thereof, and all treaties, etc., shall be the supreme law of the land ; " and art. IV, sec. 3, subd. 2, provides that, " The congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States," ·etc.    The real question is, Had congress the power to exempt this class of lands from debts created prior to the issuing of the patent, as provided in section 4 of the act of 1862 ?    The bankrupt law of 1867, and the amendment thereto, provide for an exemption of property as against existing debts, which would not be exempt under state laws.    This act is sustained on the ground that congress has exclusive jurisdiction of bankrupt matters.    So of the public lands ; congress has exclusive jurisdiction of the disposal thereof.    *Irvine v. Marshall,* 20 How., 558 ; *Jourdan v. Barrett,* 4 id., 169.    Even where congress has legislated upon a subject of which it and a state have concurrent jurisdiction, in case of conflict between the legislation of the state and that of congress, the latter prevails.    *Houston*

*v. Moore*, 5 Wheat., 1, 22, 23; *Gibbons v. Ogden*, 9 id., 1; *Ableman v. Booth*, 21 How., 506; *Tarble's Case*, 13 Wal., 397. The preëmption and homestead laws of congress are paramount laws, and there is no restriction upon congress as to the manner of disposing of the public lands.

DIXON, C. J. The principal question involved in this appeal is as to the constitutional validity and operation of section 4 of the act of congress, approved May 20, 1862, entitled "An act to secure homesteads to actual settlers on the public domain." 12 U. S. Statutes at Large, ch. 75, p. 393; 2 Brightly's Digest, p. 397, § 53. The section reads as follows: "*And be it further enacted*, That no lands acquired under the provisions of this act shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor." Has congress the power thus to declare the exemption, from forced sale in satisfaction of his debts, of the homestead of the settler on the public domain, acquired by him in pursuance of the law of congress enacted for that purpose?

In considering the power of congress and the validity of its enactments in a constitutional sense, the proper course always is to point out the clause or clauses of the constitution of the United States under which congress is supposed to have derived its authority. In the present case we are referred to article IV, section 2, subdivision 2, which provides: "The congress shall have power to dispose of, and make all needful rules and regulations respecting, the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state." We are likewise referred to subdivision 2 of article VI, which is in the following words: "This constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of

the United States, shall be the supreme law of the land ; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

The decisions of the supreme court giving construction to the clause first quoted, and the extensive powers held to have been thereby conferred upon congress, are familiar to all persons who have made the authority of congress, and consequently the adjudications of that court, the subjects of any particular study and examination. It is not necessary to go over the decisions now, nor to indulge in any especial comment upon them, but only to inquire whether the power expressly given " to dispose of, and make all needful rules and regulations respecting the territory and other property belonging to the United States," includes the power of declaring the exemption respecting, the homestead of the settler on the public domain of the United States, or territory belonging to it, which homestead is proffered to the settler and settlement thereon invited by congress, under an act passed with a view " to dispose of" the public domain, and thus to carry into execution the authority conferred upon congress for that purpose. The question seems to be, whether the declaration of such exemption, made in order to induce settlement upon and cultivation of the soil, is the exercise of a power granted by the words, " to make all needful rules and regulations." It is obvious that what may or may not be a needful rule or regulation, is a question vested very largely, if not entirely, in the sound discretion of congress. Congress is to judge and determine for itself what may or may not be a needful rule or regulation in the premises, and such judgment having been exercised and rules and regulations made, it is not for the courts to overrule its determination. This principle in the interpretation of written constitutions is well settled, and there seems to be no room to doubt its application to the clause in question. If, therefore, when providing for the disposition of the public lands and territory belonging to the United States,

congress deemed it advisable and necessary in furtherance of that object to declare such exemption, the validity of such regulation is not the proper subject of judicial criticism or examination. The necessity for the regulation rests in the discretion of congress, and its decision is conclusive in all other places and before all judicial tribunals. The enactment becomes the supreme law of the land, and the judges in every state are bound by it.

In confirmation of these views nothing is required beyond repeating the language of the supreme court in a late case (*Gib son v. Chouteau*, 13 Wallace, 92, 99), and which was quoted by this court in *Farrington v. Wilson*, 29 Wis., 383, 390. The supreme court say : " With respect to the public domain, the constitution vests in congress the power of disposition and of making all needful rules and regulations. That power is subject to no limitations. Congress has the absolute right to prescribe the times, *the conditions*, and the mode of transferring this property, or any part of it, and to designate the persons to whom the transfer shall be made. No state legislation can interfere with this right or embarrass its exercise ; and to prevent the possibility of any attempted interference with it, a provision has been usually inserted in the compacts by which new states have been admitted into the Union, that such interference with the primary disposal of the soil of the United States shall never be made."

Such provision was inserted in the act passed to enable the people of Wisconsin territory to form a constitution and state government, and for the admission of such state into the Union. R. S., Appendix, pp. 1081, 1084 ; 1 Tay. Stats., pp. 81, 84. The language of the enabling act, that the state " shall never interfere with the primary disposition of the soil within the same by the United States, nor with any regulations congress may find necessary for securing the title in such soil to *bona fide* purchasers thereof," is embodied in the constitution of this state, and expressly made a part thereof. Constitution, art. II, sec. 2.

Gile and another vs. Hallock.

The other objection taken to the complaint, that it states no cause of action, because the claim of lien upon or interest in the land, made by the defendant under the judgment and cer-· tificate of sale, is void upon the face of the records, and so does not create any cloud upon the title of the plaintiffs, is also un-' tenable. This objection proceeds upon the assumption that the records of the United States land office at which the settler made his application under the homestead law, and through which he procured his title, as also the records of the general land office, taken in connection with the record of the judgment and of the proceeding to sell by virtue of it, furnish complete record evidence of the invalidity of the defendant's supposed lien and interest in the land asserted under the judgment. This may as a general proposition be correct, but it is not so for the purpose of applying the doctrine of the court of chancery that the court will not interfere or grant its aid where the claim set up and complained of as a cloud upon the title of the plaintiff, is clearly void upon the face of the records, and so can not deceive or mislead anybody, or operate to the hindrance or damage of the plaintiff. The records thus spoken of and intended are some public records of the county or state in which the lands are situate, and of which purchasers and others having occasion to examine the title are bound to take notice. The records of neither the general nor the local land office are such records. They are foreign records, and, although provision has been made by act of the legislature for procuring exemplifications of them which may be read in evidence in the courts of the state, they are yet for the purposes of this action mere extrinsic evidence, having the same, and no greater or different effect than would evidence resting wholly in parol, upon which the plaintiffs relied to show the invalidity of the claim set up by the defendant. So far as the records of the county of Clark are concerned, in which the land of the plaintiffs is situated, the lien or interest claimed by the defendant is apparently good against the title shown by the plaintiffs, and

consequently constitutes a cloud upon their title, which, on the facts stated in the complaint, they are entitled to have removed by the judgment of a court of equity.

The demurrer to the complaint was properly overruled; and the order appealed from must be affirmed.

*By the Court.* — Order affirmed.