DANIEL AINSWORTH, *et al.*, v. GEORGE D. MILLER, *et al.*

1. ILLEGAL AND PROHIBITED CONTRACTS, *Not Enforced; Preëmption Act of 1841.* A person claiming a right of preëmption in certain land, under the act of congress known as the preëmption act of September 4th 1841, who agrees for a consideration of $1,400 to enter said land and then convey the same, and who in pursuance of said agreement does enter and convey the same, first making oath as required by the thirteenth section of said act, that he has not made any such agreement, and after having received $400 of said consideration, which is used to pay the expenses of the preëmption and to obtain the title, and while retaining possession of the premises, cannot maintain a suit to have the conveyance executed by himself nor the conveyances of his grantee vacated and annulled for the refusal of the grantee to pay the $1,000 still unpaid.  A court of equity will not extricate him from the consequences of his own acts voluntarily committed to carry out the illegal contract.

2. ——— *Affidavit; Knowledge of Contract; Presumption.*  In such a suit, such preëmptor is conclusively presumed to know the contents of the oath or affidavit made by him on his final proof by which he obtains his title to the premises, and he cannot be heard to say that he was ignorant of the contents thereof.

*Error from Marion District Court.*

ACTION by *Miller* and wife to set aside and cancel certain conveyances.   The necessary facts are set forth in the opinion. The district court, at April Term 1876, gave judgment in favor of *Miller* and wife, plaintiffs; and *Ainsworth* and *Stone*, two of the defendants, now bring the case here on error.

*Frank Doster*, and *C. S. Bowman*, for plaintiffs in error.

*J. W. Ady*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The defendant in error George D. Miller had filed declaratory statement for, and was in possession of, a tract of land in Marion county, under the congressional preëmption act of 4th September 1841. With the knowledge and consent of his wife, the other defendant in error, he <span style="float:left">Statement of<br>the case.</span> agreed with Daniel Ainsworth, one of the plaintiffs in error, and one George M. Berdine, to "prove up" and enter said land, and then convey the same to the said Berdine, he (Berdine) agreeing to advance the purchase-money ($400) to the government, and then pay Miller $1,000. In pursuance of said agreement Miller "proved up," taking the oath required by the 13th section of the preëmption act. Berdine paid the $400 entry-money, about $350 of which he obtained by drawing a check on a bank in Indiana, and getting Ainsworth to indorse it, which check was protested, and subsequently paid by Ainsworth. After making the entry, Miller and his wife conveyed the land to Berdine in pursuance of the previous agreement, but Berdine, instead of paying the remaining $1,000 of the purchase price, gave to Miller what he represented to be an U. S. bond for $1,000, and which Miller believed to be genuine, but which was in fact a Mexican bond for $1,000. Upon the discovery of that fact, Miller demanded of Berdine the payment of the $1,000 in money, according to the original agreement, but the matter was finally adjusted by Miller returning the Mexican bond to Berdine, and taking a mortgage for $1,000 upon the land, to secure the payment of that amount in ten days, with an agreement that it should not be recorded until the ten days had expired without payment. It was never paid. Prior to the giving of the mortgage, Berdine conveyed the land to Ainsworth, who then conveyed it to Stone, a resident of England, in consideration of a pre-existing debt. Ainsworth, at the time of this conveyance, was Stone's agent for the purchase and sale of lands, the renting of property, etc. Stone accepted the conveyance.

The deed to him was recorded by Ainsworth, but was held by him as his agent, to await the issuance of the patent before delivery.

Upon discovering that these conveyances had been made, Miller and wife brought suit against Berdine, Ainsworth and Stone, to set aside the same, charging fraud against all of them, but without offering to return the $400 entry-money. Berdine and Stone were served by publication, but Berdine did not answer. Ainsworth and Stone filed separate answers, each denying the fraud imputed, and asserting their *bona fides*, and also alleging the fact of the oath in accordance with the 13th section of the preëmption act.

Objection was made to the introduction of any evidence, under the petition, because it did not state sufficient facts, and a demurrer to the evidence was filed, because a cause of action had not been proved, which objection and demurrer were overruled, and exceptions duly taken. The questions of fact were referred to a jury, who made special answers, and rendered a general verdict in favor of plaintiffs, upon the strength of which the court decreed to the plaintiffs all the relief asked, but without ordering or providing for the repayment of the $400 entry-money advanced by Berdine or Ainsworth. The defendants moved for a new trial, which was refused, and they bring the case here.

The facts in this case prevent any recovery on the part of the defendants in error in the court below, and therefore the judgment is erroneous. No contract prohibited by the express provisions of a statute can be enforced in any court, either of law or equity; and where an illegal contract has been 1. Illegal contracts, not enforced by courts. in part performed, a court of justice will altogether refrain from adjudicating between the parties tainted with the wrong, on the ground that *ex turpi causa non oritur actio*. Generally, those who violate law in their dealings with one another, are left precisely in the same condition they placed themselves. Where money is paid in pursuance of an illegal contract, the consideration of course fails, for it is impossible for the party who has paid

the money to enforce the performance of the illegal contract.
Still, no action will lie to recover it back again.  The reason
of this is, that the law will not assist a party to an illegal
contract.  He has lost his money, it is true, in such a case,
but he has lost it by his own folly or wrong in entering into
a transaction which the law forbids.  The end attempted to
be reached by this principle is, to restrain and discourage a
violation of law by withholding a remedy founded on the
illegal contract.  Said Lord Mansfield, in *Hulman v. John-
son,* Com. B. Rep. 343, "the objection that a contract is im-
moral, or illegal, as between plaintiff and defendant, sounds
at all times very ill in the mouth of a defendant.  It is not
for his sake that the objection is ever allowed, but is founded
on the general principles of policy, which the defendant has
the advantage of, contrary to the real justice between him-
self and the plaintiff."  So, where it appears in a case, that
a plaintiff cannot make out a claim, except through an al-
leged transaction with which he is tainted, such claim cannot
be effectual in a court.  Thus, "Those who make the covi-
nous conveyances, and other acts denounced by the statute of
fraud and perjuries, are not permitted to apply to the courts
for extrication from the consequences of their fraudulent acts,
if the grantee prove false to the secret trust reposed in him."
We need only refer to the preëmption act of 1841, 5 U. S.
Stat. at Large, 456, as conclusive proof of the express ille-
gality of the transactions between Miller and Berdine.  Sec-
tion 13 provides that a person claiming a right of entry
under said act, "shall make oath that he or she has not,
directly or indirectly, made any agreement or contract, in
any way or manner, with any person or persons whatsoever,
by which the title which he or she might acquire from the
government of the United States, should inure, in whole or
in part, to the benefit of any person except himself or her-
self; and if any person taking such oath shall swear falsely
in the premises, he or she shall be subject to all the pains
and penalties of perjury, and *shall forfeit* the money which
he or she may have paid for said land, and all right and title

to the same; and any grant or conveyance which he or she may have made, except in the hands of *bona fide* purchasers for a valuable consideration, shall be null and void." This section is plain, direct and certain in its terms, and was openly violated by Miller on 11th September 1875, when he subscribed to and took the oath before the register of the land office, at Wichita, that "he had not directly or indirectly made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he was then seeking to acquire from the government should inure, in whole or in part, to the benefit of any person except himself." The arrangement on the part of Miller was, to make the final proof, including the oath taken by him, and then to convey and give possession of the premises to Berdine. Berdine substantially said to Miller: "I will give you $1,400 for your land, if you will agree to sell it to me; if you will agree to swear that you have not sold it to me; if you will agree to enter it, and will agree to give me a deed." Miller said to Berdine: "For $1,400 I agree to sell the land to you; agree to swear that I have not sold it to you; agree to enter it, and agree to give you a deed." Certainly under such a contract, no specific performance could be decreed in favor of Berdine; nor can Miller, who comes thus unclean into a court of justice, have a right of action against a *particeps* in the fraud, based upon the refusal of such party to carry out his part of the illegal contract.

From the findings of the jury, Miller has not been very greatly overreached. He is in the possession of the premises, which were paid for by Berdine and Ainsworth; no *bona fide* purchaser has obtained any title or interest in the same; Berdine and Ainsworth can never assert any title, owing to their criminality in the transactions; and unless the United States steps in and cancels the fraudulent entry, and dispossesses Miller and wife, they are still the gainers by the bargain, notwithstanding they stupidly accepted a worthless Mexican bond of $1,000 for a promised U. S. bond of that denomination. It is true, that Miller's title is clouded by his own conveyance,

but Berditte and Ainsworth lose the $400. This case literally verifies the old maxim, that "honesty is the best policy." The excuse of Miller, that he did not know what the affidavit contained, which was sworn to by him in making his final proof, does not, in this proceeding, assist him. He derives his title under such affidavit, and cannot be heard to say he disowns its statements. If the maker of such an affidavit shall be permitted to deny its contents, or plead ignorance of its language, after having obtained benefit from its use, or after it has subserved his purpose, there is no saying to what extent the excuse of ignorance might be carried. It would always be urged in false oaths; and if this qualification should be inserted in said section 13th, the oath provided for would become nugatory. Within the rule, that all men are presumed cognizant of the law, both Miller and his wife were bound to know the character of the affidavit required to be filed to enter the land in controversy, and they will not now be heard to say they were ignorant. *Ignorantia juris non excusat.* Whether Miller was in fact acquainted with all the contents of his affidavit of final proof, is immaterial. It was his duty to know its contents. The law favors no trifling with oaths, and in this case estops him from pleading ignorance.

2. Affidavit: knowledge of contents.

Neither the petition nor the evidence in the case, nor the findings of the jury, alone, or together, state sufficient facts to authorize any judgment for the defendants in error. The judgment of the district court must be reversed, and the case remanded.

All the Justices concurring.