ADAM BRANDHOEFER, APPELLEE, v. E. BAIN,
APPELLANT.

FILED SEPTEMBER 17, 1895.    No. 6210.

1. **Judgment Under Invalid Statute:** VALIDITY: CONSTI-
TUTIONAL LAW: JURISDICTION.   Where a court proceeds in an
action according to the provisions of a statute which is uncon-
stitutional, its judgment is not void but at most erroneous, pro-
vided its jurisdiction of the action does not depend upon the stat-
ute, but exists independently thereof.

2. **Exemption:** HOMESTEAD.   Lands acquired under the federal
homestead law are forever exempt from liability for the debts
of the patentee created before the issuing of the patent, and this
although the patentee convey the lands and afterwards re-acquire
the title.

APPEAL from the district court of York county.   Heard
below before BATES, J.

*George B. France,* for appellant.

*Gilbert Bros.,* contra.

IRVINE, C.

Adam Brandhoefer entered the west half of the south-
east quarter of section 20, in township 11 north, of range
1 west, in York county, under the federal homestead law.
A patent was issued to him in 1878.   In 1885 Brandhoefer
and wife conveyed the land to Leonidas A. Brandhoefer,
and in 1886 Leonidas Brandhoefer conveyed it to Eliza
Brandhoefer, the wife of Adam.   In 1891 Eliza Brand-
hoefer died, and on February 29, 1892, the county court
of York county, on application of Adam Brandhoefer, set
aside the land in question as the homestead of the husband,
the county court apparently acting under the provisions of
chapter 57 of the Session Laws of 1889, which has since

been declared unconstitutional. (*Trumble v. Trumble*, 37 Neb., 340.) In 1876, prior to the issuing of the patent, Adam Brandhoefer had become indebted to E. Bain, and in 1879 Bain recovered judgment against him. On July 14, 1892, an order was entered by the county court reviving this judgment. Bain then brought this action, alleging facts which he claimed rendered the land exempt from liability for the satisfaction of the judgment, and praying that it be decreed to be free from the apparent lien thereof. A decree was rendered in favor of the plaintiff, from which Bain appeals. Certain other matters were involved in the case, but the foregoing is all which relates to the subject-matter of the appeal.

Among the questions discussed are several relating to the force and effect of the order of the probate court setting apart to the plaintiff the land in question as his homestead, it being contended on the one hand that the act of 1889 being unconstitutional, these proceedings were void, and, on the other hand, that the declaration of the unconstitutionality of that act did not affect the validity of any proceedings had thereunder, or if it did, that chapter 32 of the Session Laws of 1895, which was intended as a curative act, validated such proceedings. None of these questions do we consider properly involved in a determination of the case. Prior to the passage of the act of 1889 it had been determined that the county court had jurisdiction to assign dower, and, therefore, curtesy, from the lands of a decedent, and also to set aside the homestead of the surviving husband or wife. (*Guthman v. Guthman*, 18 Neb., 98.) Therefore the jurisdiction of a county court to assign an estate by curtesy or a homestead did not depend upon the act of 1889, and, irrespective of that act, the county court had jurisdiction of the proceedings which led to the setting aside to Brandhoefer of the land in question as his homestead. This being so, the action of the court in setting aside the homestead in pursuance of the act of 1889 affected only the

regularity of the proceedings, and not the jurisdiction of the court. While its action may have been erroneous, it was not void, and is not open to collateral attack. Therefore, when the plaintiff showed an estate assigned to him by decree of a court having jurisdiction of the subject-matter, this was sufficient proof of title to, *prima facie* at least, establish in him an actionable interest. The force of the decree of the county court does not, therefore, depend in any manner upon the act of 1889. Independent of that act questions are presented as to the effect of the decree as against one not a party to the proceedings, as determining the right of exemption. These questions we shall not determine, because the judgment must in any event be affirmed on another ground.

This land was entered by the plaintiff as a homestead under the federal law, and the debt upon which the judgment was rendered was one created before the patent was issued. Section 2296, Revised Statutes, U. S., provides: "No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." The validity of this act of congress has been determined beyond question, and we refer to one case on the subject merely for the purpose of calling attention to the reason of the act. In *Seymour v. Sanders*, 3 Dill. [U. S.], 437, it is said that congress has plenary power over the disposition of public lands to dispose of them at such time, in such manner, and for such purposes as in its judgment it may deem best, and that the object of section 2296 is to benefit the poor man who is unable to pay for the land at once, and receive his title without condition, congress conceiving that the creditor in such cases has no equity to subject to the payment of his debt lands which had been given to the debtor by the bounty of the government. The state courts have uniformly given effect to the provision by holding that judgments rendered for debts contracted prior to the

patent are not dormant liens, to become valid when the entryman shall convey the land, but, on the contrary, that the provision referred to is a condition attached to the grant of the land which inures not only in favor of the patentee, but in favor of his grantees. (*Smith v. Steele*, 13 Neb., 1; *Baldwin v. Boyd*, 18 Neb., 444; *Jean v. Dee*, 5 Wash., 580; *Sorrels v. Self*, 43 Ark., 451; *Miller v. Little*, 47 Cal., 348; *Russell v. Lowth*, 21 Minn., 167; *Gile v. Hallock*, 33 Wis., 523.) There can be no doubt, therefore, that the land was not subject to the payment of this debt before Brandhoefer conveyed it; nor did it become liable for the debt in the hands of his grantees; but it is urged that, having again reached him, it is now liable. In other words, that while it was not liable as long as he retained it, or in the hands of any one deriving title through him, still, whenever he should acquire a new title to the land, it would then become liable. We cannot find that the precise question has ever been determined. In the absence of direct authority, the apparent analogy of the law of commercial paper at once suggests itself. It is a familiar rule that if a negotiable instrument once reaches the hands of a *bona fide* holder for value, it is discharged from equities, although he should transfer it to a third person with notice of such equities; but still, if the transferee should happen to be the original payee of the instrument, it would be subject to the equities in his hands. This rule and the reasons therefor are strongly stated by Judge Cooley in *Kost v. Bender*, 25 Mich., 515. By examining that case it will be seen that the reasons for the rule are that, while the protection of the innocent holder requires that those taking from him should also be protected, it is not very important that there should be one person in the world incapable of succeeding to his equities. The rule protecting innocent purchasers is for the benefit of the purchaser, and not for the benefit of the culpable payee. Against him the payor, were he compelled to pay the paper, would have his remedy

by action, and to avoid circuity of action if the paper comes back to his hands, the payor should be permitted to set up the defense. The reasons, therefore, for changing the rule in regard to commercial paper, when it returns to the original payee, are in no sense applicable to this case. The policy of the law merchant is to afford full currency to commercial paper. The policy of the homestead law is not to facilitate the free conveyance of the property. The policy of the law merchant is not to protect a payee without equity, but to protect innocent purchasers, while the first object of the homestead act is to protect the patentee. We are satisfied that no analogy can be drawn from the law merchant.

Recurring to the statute its language is of the broadest character: Lands acquired under the homestead act shall not "in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." If we should hold that when the patentee has conveyed the land to another, and then re-acquires it, it then becomes subject to liability for debts created prior to issuing of the patent, we should hold that in one event the exemption should not apply, thus, as we believe, engrafting an exception upon a statute couched in universal terms. Furthermore, as will be seen by an examination of the cases already cited, the courts have not regarded this act merely as one of exemption, simply staying the hands of the officers so long as the land is retained as a homestead, but, on the other hand, they have always treated it, not as an exemption, strictly speaking, but as a reservation or condition in the grant itself, whereby, acting under its sovereign authority in the disposal of its public land, the federal government has refrained from conveying the land in such a manner as to subject it to the payment of this particular class of debts. No lien for such a debt ever attached to the land during the patentees' original tenure, or while it remained in his grantees, and we can perceive

54

no sound reason why when he became reinvested with the title a lien should then for the first time attach. It is said that when the entryman has been protected in the possession of the land so long as he retains it as his homestead, and when he is permitted to dispose of it for full value without subjecting it to the debt in the hands of his grantee, he has received the full benefit of the exemption, and he should not be entitled to claim the exemption should he become reinvested with the title. This argument has force, but we do not think that it should prevail against the strong language of the exempting statute, and the manifest object to make the land not merely temporarily exempt from execution, but to grant it absolutely and forever free from liability. Our conclusion is that a particular tract of land acquired under the federal homestead law is forever exempt from liability for the debts of the patentee, created before patent issued, and this, without regard to whether he remains the owner or regains the ownership. The judgment of the district court was therefore right.

JUDGMENT AFFIRMED.