[No. 3841.   Decided September 17, 1901.]

R. H. WEBER, *Respondent,* v. WALTER R. LAIDLER *et al.,*
*Defendants,* ALMON BAKER *et al., Appellants.*

PUBLIC LANDS — MORTGAGE OF HOMESTEAD ENTRY — VALIDITY.

Rev. St. U. S. § 2296, which provides that no lands acquired
under the provisions of the homestead act shall in any event
become liable to the satisfaction of any debt contracted prior to
the issuing of the patent therefor, is intended as a prohibition
on the involuntary appropriation of the homesteader's land by
way of execution or attachment, and does not contemplate a re-
striction upon his power to voluntarily mortgage his interest
therein.

SAME — MORTGAGE BEFORE ACTUAL ENTRY — ESTOPPEL.

The fact that an entryman of public land under the homestead
act mortgages his homestead claim before actual entry thereon
would not invalidate the mortgage, since his act would be con-
trolled by the ordinary rule of estoppel applicable to cases of after
acquired title by one who had mortgaged property of which he
was not at the time the owner.

Appeal from Superior Court, Klickitat County.—Hon.
·ABRAHAM L. MILLER, Judge.   Affirmed.

*Winthrop B. Presby,* for appellants.

*Dufur & Menefee* and *N. B. Brooks,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—On the 16th day of February, 1892, Wal-
ter R. Laidler and wife executed and delivered to the
Lombard Investment Company their mortgage upon cer-
tain real estate situated in Klickitat county.   The mort-
gage was given to secure a loan of $300 and interest.   At
the same time another mortgage was given to secure the
additional sum of $60 and interest, the latter being, by
its terms, made junior to the former.   Thereafter the said

mortgages and the notes secured thereby were duly assigned to the respondent herein.    Default having been made in payment of the loans secured as aforesaid, the respondent instituted this action to foreclose said mortgages.    The appellants were made parties defendant in the action, together with the makers of the notes and mortgages.    The complaint alleges that the appellants claimed an interest in said real estate by reason of a certain deed made by said mortgagors to them, but that any rights appellants may have in the premises are subject to the lien of said mortgages.    The appellants answered the complaint, and admitted the execution and delivery of the mortgages, but deny that said instruments ever constituted valid liens upon the land; and they allege affirmatively that at the time of making said instruments in the form of mortgages neither of said mortgagors had any title to said land, but that the entire title thereto, both legal and equitable, was then in the United States; that subsequently the mortgagor Walter R. Laidler entered said lands as a homestead under the laws of the United States, and thereafter a patent therefor was issued to said Walter R. Laidler under said homestead laws; that subsequent to the making of final proof for said lands the said Walter R. Laidler, together with his wife, conveyed the same to appellants.    The answer concludes with the demand that the court shall decree that said instruments in the form of mortgages do not constitute liens upon said lands.    To the new matter alleged in said answer respondent demurred, and the demurrer was by the court sustained.    Appellants elected to stand upon their answer, and declined to plead further, and thereupon a decree was entered foreclosing the mortgages, and declaring them to be liens upon the lands, in accordance with the

complaint. The case is now before this court on appeal from said decree.

The only question presented by the record is, did the court err in sustaining the demurrer to the answer? The principle involved is, can one, before entering public lands, or before the patent issues therefor, execute a mortgage which becomes a valid lien thereon, if he subsequently acquires the title thereto? Appellants contend that such mortgages cannot be valid liens, by reason of the provision of § 2296 of the Revised Statutes of the United States. That section is as follows:

"No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

The decisions are not uniform in their interpretation of the full meaning of the above statute. They invariably agree that lands cannot be made liable for a debt contracted before the issuance of a patent therefor when it is sought to subject the land to the payment of such debt by any unwilling or involuntary appropriation thereof,—as by way of execution or attachment; but we believe the decided weight of authority in those states where the public domain has been subject to disposal since the passage of the above statute is in favor of sustaining a mortgage upon such lands upon the principle that the act of the mortgagor is voluntary, and he is estopped to deny its validity. The principle is too well established to call for discussion that, ordinarily, if one conveys or mortgages lands to which he has then no title, his after-acquired title will inure to the benefit of his grantee or mortgagee. The same rule must apply here, unless prevented by the statute mentioned, and also by the further provision in the statutes of the United States which prohibits alienation

of the land pending the period preceding final proof. As far as we are advised, this precise question has not hitherto been before this court. Appellants refer us to *Jean v. Dee,* 5 Wash. 580 (32 Pac. 460), as being decisive of the point. But that case appears to have involved a proceeding in attachment, and a levy and sale under execution. The validity of a mortgage upon such lands is not there discussed. We have been referred to a few decisions which hold that such a mortgage cannot be sustained by reason of the federal statute. Notably among these is the decision of the supreme court of Kansas in *Brewster v. Madden,* 15 Kan. 249. In the case of *Biddle v. Adams,* 5 Kan. App. 734 (46 Pac. 986), the court says:

"The only question which remains in this case is whether the law applied by the district court was correct. If the question were a new one we should be strongly inclined, in a case of this kind, to hold in favor of the plaintiff in error, but the supreme court of this state has settled the law fully in the case of *Brewster v. Madden,* 15 Kan. 249. In that case the facts were very similar to those in the one under discussion, but it was there held that a mortgage given while title to the land was still in the United States was void. It is urged by counsel for plaintiff in error that that case ought not to be followed, for the reason that since its decision a more equitable doctrine has been laid down by the secretary of the interior of the United States, but our supreme court has followed the .case of *Brewster v. Madden* in *Mellison v. Allen,* 30 Kan. 382, and until a contrary doctrine is announced we feel bound by the decisions of that court."

It thus appears that the appellate courts of Kansas are not harmonious in their views upon this subject, and, if it were an original question in that state, a different rule might be adopted. The California supreme court has repeatedly held directly opposite to the doctrine of the Kansas court. *Kirkaldie v. Larrabee,* 31 Cal. 456 (89 Am. Dec. 205); *Christy v. Dana,* 34 Cal. 548; *Christy v.*

*Dana,* 42 Cal. 174; *Camp v. Grider,* 62 Cal. 20; *Orr v. Stewart,* 67 Cal. 275 (7 Pac. 693).

The doctrine of the California court has also been adopted in the following cases: *Dickerson v. Bridges,* 147 Mo. 235 (48 S. W. 825); *Wilcox v. John,* 21 Colo. 367 (40 Pac. 880, 52 Am. St. Rep. 246); *Stark v. Duvall,* 7 Okla. 213 (54 Pac. 453); *Norris v. Heald,* 12 Mont. 282 (29 Pac. 1121, 33 Am. St. Rep. 604); *Fuller v. Hunt,* 48 Iowa, 163; *Spiess v. Neuberg,* 71 Wis. 279 (37 N. W. 417, 5 Am. St. Rep. 211); *Jones v. Yoakam,* 5 Neb. 265; *Lang v. Morey,* 40 Minn. 396 (42 N. W. 88, 12 Am. St. Rep. 748).

The above cases proceed upon the theory that the exemption provided by the statute is meant to be a protection to the settler against a sale of the land involuntarily under execution, but that it does not prevent him from borrowing money, and voluntarily creating a lien by way of mortgage to secure the same. They also hold that a mortgage is not an alienation within the meaning of the statute, for the reason that it is not the purpose of a mortgage to pass absolute title. It is to be presumed that it is always the purpose of the mortgagor to pay the debt secured by his mortgage, and thus prevent an absolute title from accruing to the mortgagee. It is held that the inhibition of the statute is to prevent such a conveyance as intends that the title when acquired from the United States shall become the absolute title of another person than the settler, and that a mortgage is not such a conveyance, since it is only a mere possibility that such a title may grow out of the mortgage by reason of the default of the mortgagor to pay the debt. Following are some of the expressions of the decisions upon this subject: *Kirkaldie v. Larrabee, supra:*

"The title will not pass merely in consequence of the enforcement of the payment of a debt by the ordinary process of the courts, but in consequence of the voluntary contract of the party in executing the mortgage. The mortgagor of the fee is estopped from denying the existence of the lien which he has attempted to create, and from defeating by his own act the enforcement of the lien against the property thus mortgaged."

*Dickerson v. Bridges, supra*:

"The exemption in favor of the homesteader, found in section 2296, *supra,* 'that his land shall not become liable to the satisfaction of any debts contracted prior to the issuance of the patent therefor,' clearly was not intended to prevent him from creating by contract, for his own benefit, a special lien thereon. We think the obvious intention and meaning of that section is to protect the homesteader, and is in no sense a restraint upon him in the use of his land. Such is the universal rule of interpretation in construing exemption statutes, and such, we think, is the interpretation to be given section 2296 of the homestead act. The debts provided against by that section are those that may be enforced by general execution against the debtor, and not burdens imposed thereon by his own volition. We know of no instance where an exemption statute has been otherwise construed."

*Wilcox v. John, supra*:

"It has been held in a few cases that a mortgage or a deed of trust upon land is a grant or conveyance within the meaning of the statute, and consequently void. *Brewster v. Madden,* 15 Kan. 249; *Brake v. Ballou,* 19 Kan. 397; *Ainsworth v. Miller,* 20 Kan. 220. And this seems to have been the ruling of the land department at one time, but as early as 1882, Mr. Teller, the secretary of the interior, called attention to the unsoundness of the prior decisions of the department, and in a carefully prepared opinion held that the mere possibility of a title resulting for the benefit of another person, as in the case of a mortgage, was not sufficient to prevent the pre-emptor

from obtaining patent. The rule then announced, has, we think, been uniformly followed by the department since. It is founded upon sound reasons, and in practice it has not infrequently been of benefit to settlers in negotiating loans to carry them over periods of drought, or of business depression, and should be maintained if not inconsistent with the terms of the statute, as it is of the highest importance that the decisions of the courts in these matters should be in harmony with the rulings of the land department."

*Stark v. Duvall, supra*:

"It is also provided in section 2296 of the Revised Statutes of the United States (upon homesteads) that 'no lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor.' This section does not prohibit the borrowing of money at the option of the homesteader. It prohibits the land being taken from him for the satisfaction of past indebtedness. It is intended as a protection to the homesteader, and not as a limitation upon his control over the land, in disposing of or borrowing money upon it."

*Fuller v. Hunt, supra*:

"The first question presented is, as to whether a person who has entered upon land under the homestead act can make a valid mortgage upon the same prior to the time when he is entitled to make final proof. It is claimed by the appellant that he cannot, because it is provided in the homestead act that the land shall not become liable to the satisfaction of any debts contracted prior to the issuance of the patent. The debt sought to be enforced was contracted prior to the issuance of the patent. It is abundantly evident that the land could not have been reached by general execution. If the land is liable at all, it is by virtue of the act by which the debtor undertook to create a special lien upon it, and we have to say that we think that the debtor's act had that effect. Mere exemptions from execution do not prevent the debt-

or from creating such lien. Exemptions are provided merely for the debtor's protection. Such is the general rule, and such, it appears to us, is the intention of the homestead act. The only reason suggested why the claimant under the homestead act should not be allowed to mortgage his homestead is, that it would be against public interest. But the fact that the act provides against alienation by the claimant, and does not provide against mortgaging unless alienation includes mortgaging (a point which will be hereafter considered) indicates that it was not deemed to be against the public interest that the claimant should mortgage his homestead."

*Spiess v. Neuberg, supra*:

"While the title remains in the United States, it is undoubtedly true that 'no lands acquired under the provisions of' that law can 'in any event become *liable* to the satisfaction of any debt contracted prior to the issuing of the patent therefor.' Such is the statute. Sec. 2296, R. S. of U. S. This court has held that prior to such issuance of a patent such lands were not liable to attachment, execution, or mechanic's lien. *Gile v. Hallock,* 33 Wis. 523; *Paige v. Peters,* 70 Wis. 178. In the case last cited it is said in the opinion, in effect, that the right of the occupant of such lands to mortgage his interest in the same does 'not come within the prohibition of the federal statutes cited.' That assertion is not only sustained by the authorities there cited, but others. . . . We are not aware of any adverse decision in the supreme court of the United States."

*Jones v. Yoakam, supra*:

"As to the first objection to this mortgage we are of the opinion that it is not at all material when the debt was originally contracted, whether before or after the making of the final proof of settlement, etc. . . . All that congress could have intended by this section [§ 4 of the homestead act] was, that the owner of such homestead should not be deprived of the land by virtue of legal process founded on a debt contracted before the

patent has issued. It was not intended to do more than protect him against the compulsory payment of such a debt. Mark the language employed: 'No land . . . shall be *liable,*' etc., that is, bound, or answerable, in law, or equity."

Thus it appears that the overwhelming weight of authority is in favor of sustaining mortgages executed prior to the issuance of a patent.

One other question remains to be discussed in this case. The answer avers that the mortgage was executed before actual entry was made, and it is suggested that the mortgagors had no interest whatever which could have been mortgaged. The only case herein cited in which this exact state of facts existed is that of *Kirkaldie v. Larrabee, supra.* In that case the answer set up as a special defense that, after making the note and mortgage, Larrabee made an entry of the mortgaged premises under the federal homestead law; but the court sustained the mortgage. As heretofore stated, if the ordinary rule of estoppel is not invoked here, it must be because it is prohibited by the federal statute. But, since we have seen that the statute is not intended as a prohibition, the general doctrine of estoppel must apply to this as to any other case where lands are mortgaged by one not having title, but who afterward acquires title. When a person contracts an obligation to another, and grants a mortgage on property of which he is not then the owner, the mortgage is valid if the debtor ever afterwards acquires the ownership of the property by any right. 2 Herman, Estoppel, § 895, p. 1018.

The judgment of the lower court, being in harmony with the weight of adjudicated cases, is therefore affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, DUNBAR, MOUNT, and WHITE, JJ., concur.