### GOULD v. TUCKER et al.

Where a timber culture entryman on public lands dies before he completes the period of occupancy and receives a patent, his heirs succeed to his rights, and on making proof take title as purchasers from the government, and not by descent; and this is true, even though the entryman's administrator uses money of the estate to commute the entry.

Where a timber culture entryman on public lands dies before he completes the period of occupancy and receives a patent, and leaves no heirs, the land is open, as part of the public domain, for occupancy by any qualified homesteader.

The only interest in government land that the United States can convey by patent under the timber culture act is an estate free from all involuntary liens and debts of the patentee contracted prior to the issuance of the final certificate.

Under Rev. St. U. S. § 2448 [U. S. Comp. St. 1901, p. 1512], declaring that if an entryman of public land dies before receiving a patent, title to

the land shall inure to the heirs as if the patent had issued during the life of the entryman, the heirs of an entryman who dies before receiving a patent take the land subject to specific liens voluntarily placed thereon after the making of final proof, but not to debts created before this time.

(Opinion filed, Nov. 29, 1905.)

On rehearing. Judgment of trial court affirmed.

For former opinion, see 18 S. D. 281, 100 N. W. 427.

*Bruell & Morris* and *Thomas Simpson,* attorneys for appellants.

Title passes to government land when final proof is completed regardless of the time of the issuance of the patent. United States v. Freyeberg, 32 Fed. 195. The equitable title to public lands is in the purchaser immediately upon the lawful entry thereon, payment of the purchase money and issue of a Certificate of Purchase. Amadore Median Gold Mining Co. v. South Spring Hill Gold Mining Co. 36 Fed Rep. 663; Smith v. Ewing, 32 Fed. Rep. 741. The issuance of a patent after the entryman has completed his final proof is only a ministerial or a clerical act on the part of the Government, and neglect or delay in the issuance of the patent by the Government does not affect the rights of the entryman and his ownership of the property. Myers v. Croft, 13 Wall 291; Brill v. Stiles, 35 Ill., 209; Sillyman v. King, 36 Ia., 207; Moyer v. McCullough, v. Ind., 339. The patent takes effect from the date of final proof. Chapley v. Ferris, 45 Cal. 535. The patent when issued related to the time of the purchase and gave the patentee title as of that day. Fisher v. Hallock, 15 N. W. R. 552; Godding v. Decker, 32 Pac. 822; St. Onge v. Day, 18 Pac. 278.

*Sterling & Clark,* Attorneys for respondent.

Until the patent issues the legal title to public lands remain in the United States. The patent is the instrument which, under the acts of Congress passes the title of the United States and vests the land in the purchaser or entryman. Gibson v. Chateau et al, 13 Wall. P. 92; Bowne v. Walcott, 48 N. W. 336; Lessee of Grignon v. Astor, 2 How. 317; Stringer v. Lessee of Young, 3 Peters 320; Boardman v. Lessors of Reed et al, 6 Peters 328; Bagnell v. Broderick, 13 Peters, 436; Wilcox v. Jacobson, 13 Peters 516; Guaranty Savings Bank v. Bludow, 69 N. W. 41; American Mortgage Co. v. Hoffer, 12 C. C. A. 293, 64 Fed. 553; United States v.

Sternan, 1 C. C. A. 552, 50 Fed. 507; Vantongeren v. Heffernan, 5 Dak. 180, 38 N. W. 52. All exemption laws of the United States and of the State are to be construed liberally so as to best carry out the intent of Congress and of the Legislature. Kingman v. O'Callahan, 4 S. D. 68, 57 N. W. 912; Noyes v. Belding 5 S. D. 603, 59 N. W. 1069; Seymour v. Sanders, 3 Dill. 437.

FULLER, P. J. Reference to 18 S. D. 281, 100 N. W. 427, will disclose that this appeal now pending on rehearing involves the legal right to subject respondent's undivided interest in a quarter section of land to the payment of a judgment entered against her on account of a promissory note which she and her subsequently deceased husband, James S. Gould, executed and delivered to appellant O. C. Tucker in the year 1893. James S. Gould was the timber culture claimant of the premises in controversy, who upon proof of a compliance with the governing statute obtained a final certificate on the 14th day of November, 1894, and on the 24th day of February, 1895, departed this life without receiving the patent, which in his name the United States issued four months later, and the same was delivered to his widow, Mina A. Gould, who now maintains that the premises described therein are not liable for the debt contracted by herself and husband prior to the date of the final certificate.

It is settled beyond dispute that the heirs of a timber culture entryman upon public lands of the United States, who dies before completing the period of occupancy and receiving the patent, succeed to all his rights, and upon making the required proof take title as direct grantees and purchasers from the government, and not by inheritance. Aspey v. Barry, 13 S. D. 220, 83 N. W. 91. In case of Towner v. Rodegeb, 33 Wash. 153, 74 Pac. 50, the court concludes its discussion of the proposition as follows: "It therefore seems to be the policy of the law to guard homestead rights for the benefit of the entryman himself, and, in case of his death before patent, for the benefit of his heirs. Whatever rights survive the death of the homesteader belong to the heirs, and not to the estate of the deceased. The heirs do not succeed to such rights by inheritance, but by virtue of the law, which merely grants to them

preference rights. If they fail to exercise those rights, or if, as in this case, there are no heirs capable as citizens of the United States, of succeeding to such rights, then there is no one else to whom any preference right survives, and the land is open, as a part of the public domain, for occupancy by any qualified homesteader. The administrator, as such, succeeds to no rights in the homestead, for the reason that these are reserved for the heirs, and the law does not invest the administrator with any rights therein simply because there are no heirs." Even though the administrator of the estate of a deceased entryman uses money belonging to the estate to commute the entry by payment of the required amount to the United States, all rights under the patent inure to the heirs, as if their names had been specially mentioned therein and neither the administrator nor probate court have authority to sell the land to satisfy debts previously created, or burden the same with any part of the expense incurred in securing the patent. Rogers v. Clemmans, 26 Kan. 522. To the same effect are the following cases: Cooper v. Wilder, 111 Cal. 191, 43 Pac. 591; Hershberger v. Blewett, 55 Fed. 170.

Now the only interest in government land that the United States can convey by patent under the timber culture act is an estate free from all involuntary liens and debts of the patentee contracted prior to the issuance of the final certificates, and if the entryman dies before receiving a patent, "the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assigns, of such deceased patentee as if the patent had issued to the deceased person during life." Rev. St. U. S. § 2448 [U. S. Comp. St. 1901, p. 1512]. As James S. Gould died after making final proof of all the acts required by law, the title to the land described in the patent subsequently issued vested in his heirs an estate as free from their debts as it would have been free from his debts had he lived to receive the patent; and section 2448, supra, construed with other provisions relating to the subject, is ample authority for the conclusion that such was the estate conveyed in this instance by the United States patent. When considered in its relation to other provisions of the act and practically applied to this

case, the phrase, "as if the patent had issued to the deceased person during life," was intended to mean that James S. Gould, had he lived to receive the patent, would have taken the land subject to such specific liens as he might have voluntarily placed thereon after making final proof and, in case of his death, before the issuance of a patent, "the title to the land designated therein shall inure to and become vested in the heirs," burdened with debts thus secured; but not otherwise. This view derives further support from the fact that the patent must issue to the entryman, if living and to his heirs, in case of his death, because a deceased person can never become a grantee, and a patent in his name conveys no title otherwise than to his heirs upon whom a beneficent government has bestowed every legal and equitable right of the decedent, including his emancipation from debts previously contracted without reference thereto, and not secured by a mortgage thereon. Galloway v. Finley, 12 Pet. (U. S.) 264, 9 L. Ed. 1079.

In Hall v. Russell, 101 U. S. 503, the court say: "There cannot be a grant unless there is a grantee, and consequently there cannot be a present grant unless there is a present grantee. If, then, the law making the grant indicates a future grantee, and not a present one, the grant will take effect in the future, and not presently. In all the cases in which we have given these words the effect of an immediate and present transfer, it will be found that the law has designated a grantee qualified to take, · according to the terms of the law, and actually in existence at the time." Previously, when the case was under consideration, we recognized the universal doctrine that the legal title remained in the United States until the patent issued, but deemed it unnecessary to decide whether respondent's interest in the property was acquired under our statute, or as a beneficiary under the laws of the United States, and held that in either event the property was exempt from execution sale for a debt contracted by respondent and her deceased husband prior to the issuance of the final receipt. Now, as the right of James S. Gould in the land at the time of his death was not an absolute fee, but only an equitable interest, which the issuance of the patent cast upon his heirs with the legal title, we now decide that they took an

absolute fee-simple estate by grant from the United States government, and not under the law of inheritance or succession to be administered pursuant to the statute of this state. From Wilcox v. Jackson, 13 Pet. (U. S.) 498, we quote as follows: "We think it unnecessary to go into a detailed examination of the various acts of Congress, for the purpose of showing what we consider to be true in regard to the public lands; that, with the exception of a few cases, nothing but a patent passes a perfect and consummate title. One class of cases to be excepted is, where an act of Congress grants land, as is sometimes done in words of present grant. But we need not go into these exceptions. * * * A much stronger ground, however, has been taken in argument. It has been said that the state of Illinois has a right to declare, by law, that a title derived from the United States, which by their laws is only inchoate and imperfect, shall be deemed as perfect a title as if a patent had issued from the United States; and the construction of their own courts seems to give that effect to her statute. That state has an undoubted right to legislate as she may please in regard to the remedies to be prosecuted in her courts, and to regulate the disposition of the property of her citizens by descent, devise, or alienation. But the property in question was a part of the public domain of the United States; Congress is vested by the Constitution with the power of disposing of, and making needful rules and regulations respecting it. Congress has declared, as we have said, by its legislation, that, in such a case as this, a patent is necessary to complete the title. But in this case, no patent has issued: and, therefore, by the laws of the United States, the legal title has not passed, but remains in the United States. Now if it were competent for a state Legislature to say, that, notwithstanding this, the title shall be deemed to have passed, the effect of this would be, not that Congress has the power of disposing of the public lands, and prescribing the rules and regulations concerning that disposition, but that Illinois possessed it. That would be to make the laws of Illinois paramount to those of Congress, in relation to a subject confided by the Constitution to Congress only. And the practical result in this very case would be, by force of state legislation, to take from the United States

their own land against their own will, and against their own laws. We hold the true principle to be this, that, whenever the question in any court, state or federal, is, whether a title to land, which had once been the property of the United States, has passed, that question must be resolved by the laws of the United States."

Manifestly the nature of a government grant evidenced by patent is unaffected by the question whether the final proof was made by the entryman or by his surviving heirs, who, in either event, acquire, by the subsequent issuance of such patent and the process of subrogation, all his rights and immunities under the law. Concerning what respondent's rights might have been under the statute of succession, had the patent issued prior to the death of her husband, no expression is necessary, and the intimation with reference thereto contained in our former opinion is hereby recalled.

For the reasons given in this opinion, the judgment of the trial court is affirmed.