## BLAIR et ux. v. MAYER et al.

A federal homestead does not become subject to the lien of a judgment against the entryman's wife, rendered upon a joint indebtedness of husband and wife contracted prior to final proof, where the entryman, after final proof, but before patent issues, conveys to his wife.

(Opinion filed, Jan. 19, 1910.)

Appeal from Circuit Court, Hughes County. Hon. LYMAN T. BOUCHER, Judge.

Action by Seymour D. Blair and another against Sarah A. Mayer, executrix of L. J. Mayer, deceased, and others. From a judgment for plaintiffs and an order denying a new trial, defendant executrix appeals. Affirmed.

*Gaffy & Stephens,* for appellant. *Goodner & Goodner,* for respondents.

WHITING, P. J. This action was brought to quiet the title to a certain tract of land in Hughes county. It appears that the plaintiffs were, at the time this action was brought, and had been at all times hereinafter mentioned, husband and wife. The husband in 1890 filed a homestead claim upon the land in question, under the general homestead laws of the United States. He made final proof in March, 1895, receiving the final receiver's receipt, which showed that the land was taken as a homestead. Patent issued to him in 1902. In October, 1895, the husband, by warranty deed, conveyed his title to this land to his wife. Over defendants's objection it was shown that this deed was without consideration, was executed without the wife's knowledge, and that it was given solely to protect the wife in case of the husband's death. In 1892 the plaintiffs executed a note secured by a mortgage on another piece of real estate. This mortgage was foreclosed in 1895, and on special execution the land mortgaged was sold, and deficiency reported by sheriff. In 1897 the judgment creditor caused general execution to issue, and same was levied on the land in suit as the property of plaintiff's; nothing connected with the levy or return thereon showing that the property was levied on as the separate property of either plaintiff. This land was sold under such execution, and afterwards sheriff's deed issued, and through a chain of convey-

ances any rights that were acquired under such sheriff's deed passed to the appellant herein. Upon the trial findings and decree entered for plaintiffs; and a motion for new trial having been denied, the defendant Sarah A. Mayer appealed. It stands admitted that she is the sole party in interest as defendant.

The respondents claim that no title passed by the purported sheriff's sale, for the reason that the land could not be sold for the debt contracted before the patent issued. Further, they claim that the evidence sustains the court's findings to the effect that this land, at time of such sale, was the homestead of respondents under the state law, and, further, they claim that, for certain reasons alleged, the execution was invalid, and the proceedings thereunder irregular, thus rendering the sale void. The learned trial court held with respondents on the above propositions; and, if its holding was correct on the first proposition, it is conclusive of the rights of the parties herein, and renders it unnecessary to consider any assignments based on evidence or ruling pertaining to any other feature of the case.

Stated briefly, the proposition before us is this: Where a homestead entryman, after final proof, but before patent issues, conveys the homestead land to his wife, does such land become subject to lien of judgment against her, where such judgment was rendered upon a joint indebtedness of husband and wife, contracted long prior to final proof? It will be noticed that the above query leaves out all reference to the transfer being merely colorable, and is founded on facts undisputed herein. So far as we have been able to discover, this exact proposition has never been before the courts; but it would nevertheless seem to us that certain other matters have been fully settled by adjudications of this and other courts that must determine the above question in favor of respondents. It must be remembered that as the basis of this discussion we have the United States homestead laws and the reasons for their enactment. It has been held by a long line of decisions that the matters of disposing of the public lands, as to when, for how long, and for what debts they shall pass exempt to the government's grantee, are matters entirely beyond the power of state legislation to control.

In Wallowa, etc., v. Riley, 29 Or. 289, 45 Pac. 766, 54 Am. St. Rep. 794, it was well said: "In pursuance of this power, and with a view to encourage the settlement of the public domain, Congress has invited heads of families to settle upon small parcels thereof, and make for themselves homes, with the assurance that in no event shall the land become liable to the satis- faction of any debt contracted prior to the issuing of the patent, although in the meantime the settler may become the owner of the equitable title." Under the above theory it is held that the federal statute means just as it reads, that even though the equitable title is in the claimant through final proof made, yet the land is exempt from debts contracted up to date of issuance of patent, and, further, that this is more than a right of ex- emption personal to claimant, but is a condition running with the land, so that the land remains exempt from debts of entrymen when the title has passed to other parties. It has even been held that this condition follows the title back to the claimant should he ever become repossessed of the title to the land. Brand- hoefer v. Bain et al., 45 Neb. 781, 64 N. W. 213. In the case of Gold v. Tucker, 20 S. D. 226, 105 N. W. 624, it was held, in line with many authorities, that upon death of claimant after final proof, but before patent issued, the title to homestead lands would not vest by succession or devise, but by grant from the government, and that this grant attached to it, in favor of the grantee, all the conditions in favor of such grantee as would have attached if the original claimant had been grantee.

It is also well established under the authorities that the con- ditions above referred to follow the land, even if the claimant wholly abandons it as a homestead, after final proof. These federal statutes thus established much more than an exemption law in favor of the land merely as a homestead. But, consider- ing the homestead feature of the federal laws, we must recognize that these laws are for the benefit of the home, of the family taken as a whole, and should be as liberally construed as a state homestead law, so that the evident purpose of the laws may be effected that the family may all be protected thereby. That this law, taken as a whole, is intended for the benefit and protection

of the family has been held where the husband had entered into agreement, before entry on land, whereby he was to convey land to wife after patent issued. It was held that such agreement did not conflict with provisions against agreements to sell. Barlow v. Barlow, 47 Kan. 676, 28 Pac. 607. That this law must be intended to protect the wife is evidenced by the fact that, if the husband dies, all his rights pass to the wife. Why? Because the law looks not to the individuals, but, through the individuals, to the home and family. Thus in this case, if the husband had died before executing the deed to his wife, but after final proof, and this land had not been conveyed to any one, the patent would have issued to the wife, vesting the absolute title to the land in her exempt from any debt of hers then in existence, including the debt upon which the judgment was entered. Supposing the husband had died after executing the deed to his wife, but before patent issued, the legal title would pass to her from the government by patent, and this legal title would be absolutely exempt from any prior indebtedness. Could it be held for a moment that by the receipts of this deed from her husband her rights would be less if he then died than they would have been if he had died without executing a deed, and that, as a result, while the legal title was in her free from her debts, yet she held such legal title on behalf of certain parties who might have judgments of record against her, which were liens against an equitable title received from her husband? It must be remembered that, if judgment creditors acquired any rights whatever, they did so immediately upon the transfer under the deed to the wife; the judgment becoming a lien then, if at all. Can it be held that, if the wife had reconveyed this land to her husband before patent issued, it would have come to the husband subject to the lien of the judgment entered upon a debt, the debt of the wife as well as of the husband, but a debt from which the homestead of this family would have been exempt if the equitable title had not passed to a party for whose benefit, equal to that of the husband's, the homestead laws were passed? Certainly this cannot be true; it would be absolutely repugnant to the objects and purposes of the law. And by holding as we do the judgment creditor is

not wronged. It has been held repeatedly that, under the homestead laws, it is intended that creditors shall never get any benefit, except by the voluntary act of claimant, by which act he or she intentionally subjects the land to a lien. This is evidenced by the fact that unpatented homestead lands never, under any circumstances, become a part of the estate of a deceased entryman, and subject to administration as such; but, on the other hand, they revert to the government when there exists no person so related to the deceased entryman as to entitle him or her to become the grantee from the government under the federal law. The government intends to give to the homesteader and his family a new start in life, with a property acquired by their joint efforts, which property can never be taken for old claims. It certainly would not be in accord with the spirit of this law to hold that the entryman had defeated this beneficent purpose of the law by a transfer before patent to one who was, as well as himself, an intended beneficiary under the law. If appellant is right in her contention, then an entryman, in anticipation of pending death, could destroy the value of his wife's right as his widow to become the grantee of the government, by merely conveying to her his equitable interest under the final receipt. This would be absolutely repugnant to the well-established rules for construction of exemption laws, which should always be construed liberally to carry out the spirit of such laws.

Appellant contends that she was an innocent purchaser without notice. There is no possible foundation for such claim, as the records advised her of every fact upon which we have based our discussion. It was also contended that respondents were guilty of laches, but the facts shown show no inexcusable delay whatever.

The judgment of the trial court and the order denying a new trial are affirmed.