[14956. Department Two.—June 9, 1893.]

## JAMES STEWART, RESPONDENT, *v.* HARRIET H. POWERS ET AL., APPELLANTS.

PRE-EMPTION—MORTGAGE BY CLAIMANT BEFORE ENTRY—FORECLOSURE—SALE OF TITLE UNDER PATENT.—A title derived by patent from the United States, under the pre-emption laws, may be sold under foreclosure to satisfy a mortgage given by a pre-emptioner on the land pre-empted prior to making his final proofs and entry.

ID.—VALIDITY OF MORTGAGE—PROHIBITION AGAINST TRANSFER OF PRE-EMPTION RIGHT—CONSTRUCTION OF REVISED STATUTES.—A mortgage by a pre-emption claimant before entry is not void, and does not fall within the terms of the Revised Statutes of the United States declaring that "all assignments and transfers" of the right of pre-emption "prior to the issuing of the patent shall be null and void."

ID.—MORTGAGE NOT A CONVEYANCE OR TRANSFER OF TITLE—RECORDING ACT.— A mortgage in this state is not a conveyance or transfer of real property, and the fact that it is defined as "a conveyance" in the recording act does not imply that it is a transfer of title.

ID.—ESTOPPEL OF MORTGAGOR—AFTER-ACQUIRED TITLE.—A mortgagor is estopped from asserting the invalidity of his mortgage, and any after-acquired title inures to the benefit of the mortgagee, though the mortgagor may have had no assignable title at the date of the mortgage.

APPEAL from a judgment of the Superior Court of Contra Costa County.

The facts are stated in the opinion.

*Latimer & Brown,* and *Eli R. Chase,* for Appellants.

The mortgage having been given upon pre-empted land prior to the making of final proofs and issuance of a patent, was void, and the court had no power to enter a decree of foreclosure. (U. S. Rev. Stats., secs. 2262, 2263; *McCue* v. *Smith,* 9 Minn. 252; 86 Am. Dec. 100; *Warren* v. *Van Brunt,* 19 Wall. 649–655; *Evans* v. *Folsom,* 5 Minn. 422; *St. Peter* v. *Bunker,* 5 Minn. 199; *Bruggerman* v. *Hoerr,* 7 Minn. 343; 82 Am. Dec. 97; *Woodbury* v. *Dorman,* 15 Minn. 338; *Mellison* v. *Allen,* 30 Kan. 382; *Brewster* v. *Madden,* 15 Kan. 249; *Bass* v. *Buker,* 6 Mont. 442; Jones on Chattel Mortgages, sec. 177, 618. See *Whitney* v. *Buckman,* 13 Cal. 536; *Bull* v. *Shaw,* 48 Cal. 459.) A mortgage is in this state a "conveyance" within the meaning of section 2262 of the Revised Statutes. (*Odd Fellows' Sav. Bank* v. *Banton,* 46 Cal. 603; *Clark* v. *Baker,* 14 Cal. 612; 76 Am. Dec. 449; *San Francisco* v. *Lawton,* 18 Cal. 477; 79 Am.

Dec. 187; *Lent* v. *Morrill*, 25 Cal. 500'; *Morrison* v. *Wilson*, 30 Cal. 347; *Kirkaldie* v. *Larrabee*, 31 Cal. 455; *Cadiz* v. *Majors*, 33 Cal. 289; *Bull* v. *Shaw*, 48 Cal. 455.) It is well settled that a grant or conveyance, or an agreement to grant or convey, is within the prohibition of the statute. (*Damrell* v. *Myer*, 40 Cal. 166; *Hudson* v. *Johnson*, 45 Cal. 21; *Huston* v. *Walker*, 47 Cal. 484; *Thompson* v. *Doaksum*, 68 Cal. 593; *Turner* v. *Donnelly*, 70 Cal. 604; *O'Hanlon* v. *Denvir*, 81 Cal. 63; *Myers* v. *Croft*, 13 Wall. 291; *Stevens* v. *Hayes*, 48 Am. Dec. 359; *Robbins* v. *Bunn*, 5 Am. Rep. 75; *Quinn* v. *Kenyon*, 38 Cal. 499; *Moore* v. *Besse*, 43 Cal. 511.)

*W. S. Tinning*, for Respondent.

Title acquired by a mortgagor subsequent to the execution of the mortgage inures to the benefit of the mortgagee, even though the title thereto was in the government and was subsequently acquired by pre-emption. (*Orr* v. *Stewart*, 67 Cal. 277; *Christy* v. *Dana*, 42 Cal. 174; *Camp* v. *Grider*, 62 Cal. 20; *Clark* v. *Baker*, 14 Cal. 612; 76 Am. Dec. 449; *Kirkaldie* v. *Larrabee*, 31 Cal. 455; 89 Am. Dec. 205; *Sherman* v. *McCarthy*, 57 Cal. 507; Civ. Code, sec. 2930.) A mortgage is not such a conveyance or transfer as is prohibited by the provisions of the United States statutes. (*Jones* v. *Tainter*, 15 Minn. 512; *Robbins* v. *Bunn*, 54 Ill. 48; 5 Am. Rep. 75.) The following authorities are also referred to as supporting our position: *Spiess* v. *Neuberg*, 71 Wis. 279; *Rauch* v. *Dech*, 2 Am. St. Rep. 598; *Vallejo Land Ass'n* v. *Vierra*, 48 Cal. 572; *Camp* v. *Grider*, 62 Cal. 20; *Kirkaldie* v. *Larrabee*, 31 Cal. 455; 89 Am. Dec. 205; *Whitney* v. *Buckman*, 13 Cal. 536; Code Civ. Proc., sec. 744.

HAYNES, C. — Prior to November 12, 1887, Harriet H. Harding (afterwards the wife of Nathan Powers), and her sister Sarah Harding (afterwards the wife of Aurelius Sharp), each filed pre-emption claims upon certain lands of the United States situate in Contra Costa County, and had applied to the local United States land office to prove up and enter their respective parcels under the pre-emption laws of the United States, and November 15, 1887, was fixed for that purpose. Contests

against their several rights to enter all or some part of their several claims had been initiated, whereby it became necessary to employ counsel, and in order to meet this expense and to provide money to pay for their land, the two sisters, then unmarried, borrowed from respondent four hundred dollars, and executed to him their joint and several note therefor, and a mortgage upon all said lands to secure the same, and also to secure such further sums as they might require not exceeding fifteen hundred dollars in addition to the sum then borrowed. Final proofs were made on November 15, 1887, but owing to the contests, payment was not made until November 9, 1888, at which date receiver's receipts were given for the portion of their claims to which they were found to be entitled.

On January 16, 1891, respondent commenced an action to foreclose said mortgage for the amount of said promissory note and other advances. A decree of foreclosure was granted, from which Harriet H. and Nathan Powers appeal upon the judgment-roll. The land involved in this appeal is the S. W. ¼ of the S. E. ¼ of section 26, T. 2 N., R. 3 W., M. D. M.

The question as presented by appellants is: "Can a court decree that a title derived from the government of the United States, under its pre-emption laws, be sold to satisfy a mortgage given by a pre-emptioner on the land pre-empted prior to making his final proofs and entry?" Appellants contend that under the provisions of sections 2262 and 2263 of the Revised Statutes of the United States, the mortgage in question is void.

Section 2262 is as follows: "Before any person claiming the benefit of this chapter is allowed to enter lands, he shall make oath before the receiver or register of the land district in which the land is situated . . . . that he has not settled upon and improved such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use, and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person whatever, by which the title which he might acquire from the government of the United States, should inure in whole or in part to the benefit of any person except himself, and if any person taking such oath swears falsely in the premises, he shall forfeit the money which he may have paid for such land, and all right and title to the

same, and any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers, for a valuable consideration, shall be null and void, except as provided in section 2288."

Section 2263 provides that proof of settlement, etc., shall be made before final entry; and the last clause of the section is as follows: "And all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void."

These statutes were considered by the supreme court of the United States in *Myers* v. *Croft*, 13 Wall. 291. The court said: "It had been the well-defined policy of Congress, in passing these laws, not to allow their benefit to inure to the profit of land speculators, but this wise policy was often defeated. Experience had proved that designing persons, being unable to purchase valuable lands, on account of their withdrawal from sale, would procure middle-men to occupy them temporarily. under an agreement to convey them so soon as they were entered by virtue of their pre-emption rights. . . . . This was felt to be a serious evil, and Congress in the law under consideration, undertook to remedy it by requiring from the applicant for a pre-emption, before he was allowed to enter the land on which he had settled, to swear that he had not contracted it away, nor settled upon it upon speculation, but in good faith to appropriate it to his own use." And after quoting the last clause of section 2263, the court further said: "Looking at the language employed, as well as the policy of Congress on the subject, it would seem that the interdiction was intended to apply to the right secured by the act, and did not go further. This was the right to pre-empt a quarter section of land. . . . . This right was valuable, and independently of the legislation of Congress, was assignable. The object of Congress was attained when the pre-emptor went with clean hands to the land office, and proved up his right and paid the government for his land."

The direct question before the court in that case was the right to convey after the entry but before the patent had issued (which right was affirmed), but the purpose of the restrictions in the act, and the policy of Congress in its enactment, has an important bearing on the question here, and conclusively settles

that the assignments and transfers declared null and void by section 2263 of the Revised Statutes of the United States are transfers and assignments of the *right of pre-emption.* It remains to be considered whether the mortgage in question is embraced in the expression "grant or conveyance," used in section 2262.

The granting part of the mortgage is in the usual form, and following the *tenendum* clause, contains this covenant: "And the parties of the first part hereby covenant that they are lawfully seized in fee of the above-described premises, that they are free from all incumbrances, that they have good right to sell, grant and mortgage the same, and that they will forever warrant and defend the same to the party of the second part, his heirs and assigns, against the lawful claims and demands of all persons." That under this covenant any after-acquired title would inure to the benefit of the mortgagee is beyond question (*Clark* v. *Baker,* 14 Cal. 629 ; 76 Am. Dec. 449; Civ. Code, sec. 2930), unless the mortgage itself is void. It is contended, however, that a mortgage is a conveyance, and is so declared by section 1215 of the Civil Code. That section is as follows: "The term 'conveyance,' as used in sections 1213 and 1214, embraces every instrument by which any estate or interest in real property is created, aliened, mortgaged or encumbered, or by which the title to any real property may be affected, except wills."

This section defines the term "conveyance" only "as used" in the recording act, and does not imply that a mortgage is in fact a conveyance of real property, but rather the contrary; for if it were a conveyance, and so regarded and understood, it need not have been included in the definition. Section 2920 of the Civil Code defines it as follows: "Mortgage is a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." The code commissioners, in a note to this section, say: "The definition of the text is new. It is designed to make a clear distinction between a pledge and a mortgage, and at the same time to avoid the idea of a mortgage being in any sense a transfer." It is so well understood in this state that a mortgage does not transfer the title that a citation of authorities is un-

necessary. A mortgage is, therefore, not necessarily embraced in the terms "grant or conveyance," as used in the act of Congress, even though, as appellants suggest, there was, at the date of that act, but one state in which it was held that a mortgage did not pass the title. But for the restriction imposed by the act of Congress the right of the pre-emptor before proof and payment was transferrable. The restriction, therefore, cannot be extended beyond the express terms of the act interpreted in the light of the mischief to be remedied, and this transaction was not of the character requiring prohibitory legislation. On the contrary, it was in aid of the beneficient purpose of the pre-emption act. Without the aid of respondent the mortgagors were unable to perfect their entries. Making the mortgage was not inconsistent with a purpose in good faith to appropriate the land to their exclusive use, but was in aid of the purpose; nor was it a contract or agreement by which the title they might acquire from the government "should inure" in whole or in part to the benefit of respondent. There is nothing in the record tending to show that it was the intention of the mortgagors not to pay the mortgage debt, or that the mortgage should be used as a vehicle to transfer the title they might acquire to respondent. For appellants now to make such admission would be to admit that the oath taken before the register, after the execution of the mortgage, was false.

That the point under consideration has been decided in accordance with appellants' contention in other states is true. *Mc-Cue* v. *Smith*, 9 Minn. 259; 86 Am. Dec. 100, and *Woodbury* v. *Dorman*, 15 Minn. 338, cited by appellants, were expressly overruled in *Jones* v. *Tainter*, 15 Minn. 512. In line with the earlier Minnesota cases are *Bass* v. *Buker*, 6 Mont. 442, and *Brewster* v. *Madden*, 15 Kan. 249.

Whilst the precise question here presented, under well defined facts bringing it clearly within the facts of the case at bar, seems not to have been discussed in the cases in this state, we think they nevertheless conclusively settle the law against the contention of appellants.

In *Tarter* v. *Hall*, 3 Cal. 263, the mortgage was upon "a pre-emption claim," but executed before the pre-emption laws had been extended to this state. Its validity was attacked.

Held, the mortgagor was estopped from asserting its invalidity. *Whitney* v. *Buckman*, 13 Cal. 536, was a mortgage upon a pre-emption claim. The court said: "The mortgage does not pretend to transfer to the mortgagee the right to a pre-emption; this is not assignable, but the possession of public lands, whether taken for the purpose of getting a pre-emption right, or any other purpose, may be mortgaged, or the land itself; and if the mortgagee gets no title through the mortgage this is not an objection to be raised by the man who makes it." This doctrine of estoppel was also applied in *Kirkaldie* v. *Larrabee*, 31 Cal. 456; 89 Am. Dec. 205, where the mortgage was upon a homestead claim before title acquired. In *Christy* v. *Dana*, 42 Cal. 174, the mortgage was upon land upon which the mortgagor resided, and which "he proposed to claim as a pre-emption." He afterwards pre-empted the land, obtained title, and sold to a third party. Held, that the title inured to the benefit of the mortgagee. *Bull* v. *Shaw*, 48 Cal. 455, differs from *Christy* v. *Dana*, in this: that after the mortgage was executed, the mortgagor sold part of the land mortgaged to a third party who afterwards secured the government title. As to this part it was held, the title not having been acquired by the mortgagor, it did not inure to the benefit of the mortgagee, as it did not deraign title from the United States through Shaw, the mortgagor; but that if Shaw had acquired the title, and had then conveyed to Delaney, the latter would have been estopped from asserting title against the mortgage. In *Camp* v. *Grider*, 62 Cal. 25, it does not appear under what statute Grider acquired the title from the United States, but a mortgage executed while he was in possession and before he obtained title was enforced, and was held to inure to the benefit of the mortgagees.

The latest, and a case not distinguishable in principal from the one at bar, is *Orr* v. *Stewart*, 67 Cal. 275. There the mortgage was upon land taken up by Stewart under the Homestead Act of 1862. After the foreclosure of the mortgage and the sale thereunder to Orr, and the purchaser had gone into possession under the sheriff's deed, Stewart went to the United States land office and was permitted to commute his homestead entry into a cash entry, paid for the land, and received a certificate of purchase. The action was commenced by Orr to quiet

title against Stewart. Judgment for defendant was reversed. It was held that the after-acquired title inured to the benefit of Orr, the purchaser at the foreclosure sale. The only apparent distinction between that case and this is that in *Orr* v. *Stewart* the land, at the time the mortgage was made, was held under the homestead laws, though afterwards commuted and entered under the pre-emption laws. The opinion proceeded upon two grounds: 1. That the mortgagor was estopped from defeating, by his own act, the enforcement of the lien he attempted to create; and 2. That the mortgage was not made void or voidable under the provisions of the Homestead Act.

In no case which we have been able to find in the reports of this state has a mortgage been held invalid against the mortgagor because of the fact that the title was in the United States at the date of the mortgage, whether the land was occupied by the mortgagor under the homestead or under the pre-emption laws. In none of these cases has either section 2262 or 2263 of the Revised Statutes of the United States been mentioned by the court, though it is hardly possible that they have been overlooked; and that fact would seem to show that a mortgage, under our system at least, was not regarded as a conveyance within the meaning of those sections.

We conclude, therefore, that a mortgage executed by a pre-emption claimant before final proof and payment, at least if given to secure the repayment of money loaned to pay for the land or in any manner to aid the mortgagor in perfecting his title, is not in contravention of the pre-emption laws, and that if it purports to be a mortgage of the fee it carries the after-acquired title, unless it is intended as a mode of transferring the title in evasion of the statute; and further, that under the uniform current of authorities in this state, the mortgagor is estopped from defeating by his own act the operation and enforcement of the lien appellants have attempted to create.

These views render it unnecessary to distinguish between that part of the mortgage debt created before entry, and any portion of it which may have been created afterwards.

The judgment appealed from should be affirmed.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion, the judgment is affirmed.

DE HAVEN, J., McFARLAND, J., FITZGERALD, J.

Hearing in Bank denied.