## C. M. STARK *et al.* v. C. H. DUVALL *et al.*

### (Filed July 30, 1898.)

1. CONTRACTS—*Breach—Action for.* If one of the parties to a contract makes it impossible that he shall perform his promise, the other party may treat the contract as broken, and bring an action immediately.

2. PROPERTY—*Transfer of—Alienation.* "Alienation," applied to the transfer of property, involves the complete and absolute exclusion from him who alienates of any remaining interest in the thing transferred, and involves the complete transfer of the property, possession of land, tenements, or other things, to another.

3. HOMESTEAD—*Mortgage.* The entryman, under section 2291 of the Revised Statutes of the United States, who swears that "no part of the land" which he seeks to have conveyed to him from the United States "had been alienated," may mortgage his claim before final certificate, in order to procure money with which to improve his land, or for any other purpose, provided he seeks in good faith to acquire the land as a homestead; and such mortgage will not be alienation, under the statute.

4. SAME—*Estopped.* Under such circumstances, the mortgagor will be estopped from defeating by his own act the operation and enforcement of the lien which he has created, notwithstanding that the mortgage may have been made before final receipt.

5. HOMESTEAD LANDS—*Liability for Debt.* Section 2296 of the Revised Statutes of the United States, which provides that "no lands acquired under the provisions of this chapter shall, in any event, become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor," does not prohibit the borrowing of money and the mortgaging of the land before or after final receipt. The statute is a protection to the homesteader, and not a limitation upon his voluntary control over the land, in disposing of and borrowing money upon it; and he cannot afterwards deny the validity of the mortgage, under the provision of the statute referred to.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Cotteral & Hornor*, for plaintiffs in error.

*Teague Ray*, for defendants in error.

### STATEMENT OF FACTS.

Action by C. H. Duvall against Rachel A. Wright and another to foreclose a mortgage, in which C. M. Stark and others, partners as Stark Bros., intervened. There was a judgment against them, and interveners bring error. Reversed.

The admitted facts in this case are that one Frieze made a homestead entry upon a quarter section of land in the land office at Guthrie, on October 29, 1889. On October 21, 1891, he and his wife entered into a written contract, styled an "indenture," which was duly signed and executed by them before a notary public and thereby acknowledged by them to be their free act and deed, by which they agreed to purchase from the plaintiffs in error for the sum of $679, 3,950 fruit trees, to be planted upon the land described in the indenture, and which provided that the debt should be paid by the payment of one-half of the gross amount of the sale of the fruit of the trees in each year, to the plaintiffs in error; the final payment to be made within ten years from the date of the instrument. It was expressly stipulated in the indenture on behalf of Frieze and his wife, that the indenture should be a lien upon the real estate described therein, until the full amount, with the interest, should be paid, and that in case of the failure of the contracting parties to pay the debt the real estate should be subjected to the payment thereof; a statement being at the same time made that the property was free and clear of incumbrances, and that the title was perfect. This instrument was duly recorded in the office of the register of deeds of Logan county on November 2, 1891. On December 29, 1894,

Frieze made final proof under the homestead laws of the United States, receiving in evidence thereof the receiver's final receipt. On the —— day of ——, 1894, Frieze and his wife conveyed the land by warranty deed to Rachel A. Wright, at the same time surrendering possession of the land to her; and thereupon, about the same time, Rachel A. Wright, joined by her husband, George D. Wright, both defendants in error, gave to Frieze, as a part of the consideration for the land, their note for $825, and a mortgage on the land securing the note. Thereafter Frieze transferred the note to Duvall, who instituted suit for judgment on the note, and for foreclosure of the mortgage. The plaintiffs in error intervened in the case, setting up the indenture made by Frieze to them on October 21, 1891, averring the facts heretofore stated, and also charged that they had themselves fully complied with their part of the agreement, delivering the trees as agreed, and that they were planted upon the land by Frieze; that a lien had thus been created upon the land for the purpose of securing the payment of the full indebtedness therefor. The intervening petition of the plaintiffs in error, filed by leave of court, charged that Frieze and his wife had utterly abandoned and repudiated their agreement with Stark Bros., and rendered their performance of the agreement impossible; that the mortgage lien of Stark Bros., created by the indenture, became good and complete from the time of the final receipt; and that the whole became due to the plaintiffs in error forthwith from the time that Frieze had abandoned and repudiated the agreement by conveying the land by warranty deed to Rachel A. Wright, and taking from her and her husband a mortgage for the sum of $825 to secure a part of the payment therefor. The in-

tervening petition of the plaintiffs in error charged that
the Wrights had full notice and knowledge of the agree-
ment and indenture of Frieze with Stark Bros., and the
prior mortgage lien thereby upon the land, and that, in
order to escape the liability of the plaintiffs in error upon
his contract with them, he had fraudulently transferred
the note to Duvall, the plaintiff, so that the latter might
pretend to be an innocent purchaser of the note and
mortgage securing it—the intention being to cheat and
defraud both Stark Bros. and the Wrights—and that
Duvall participated in this corrupt and fraudulent de-
sign; and that this action was instituted by him in order
to obtain judgment upon the note and the foreclosure of
the mortgage assigned to him. The prayer of the plain-
tiffs in error was for judgment of the amount of the in-
debtedness of Frieze to them, for the foreclosure of their
mortgage as a first lien upon the land, and for the pur-
pose of satisfying the debt due to them. The interven-
ing petition was demurred to by Duvall. The demurrer
was sustained, and from this judgment the plaintiffs in
error have appealed.

Opinion of the court by

McAtee, J.: The question to consider is whether the
intervening petition made out a case upon which the
plaintiffs in error are entitled to recover, and whether at
the time of the institution of their suit they were en-
titled to this remedy. Upon the latter proposition there
can be no doubt, since it is well established that when
one of the parties, before the time of the performance ar-
rives under a contract, makes it impossible that he shall
perform his promise, the other party may treat the con-
tract as broken, and bring an action immediately. (Law-
son, Cont. sec. 441; *Wolf v. Marsh*, 54 Cal. 228; *Hawley v.*

*Keeler*, 53 N. Y. 114; *Grice v. Noble*, 59 Mich, 515, 26 N. W. 688.)

It is provided by section 2291 of the Revised Statutes of the United States that no certificate should be given or patent issued before the expiration of five years from the date of entry; that before final receipt an affidavit must be filed by the entryman, averring that "no part of such land had been alienated." And the question arises whether the indenture of Stark Bros. was such an alienation as is prohibited by the statute. "Alienation" is the voluntary and complete transfer from one person to another, and, if it be concerning the transfer of property, it involves the complete and absolute exclusion, out of him who alienates, of any remaining interest, or particle of interest, in the thing transmitted. It involves the complete transfer of the property and possession of land, tenements, or other things to another. (2 Bl. Comm. 287; *Boyd v. Cudderback*, 31 Ill. 119.)

And, while other views were formerly held by some of the courts, the doctrine was announced in *Mudgett v. Railroad Co.*, by Secretary Vilas, (8 Land Dec. Dept. Int. 243-248,) that the "alienation prohibited by the statute is an absolute alienation of the land, or a part thereof, whereas the mortgage given by Mudgett was simply a pledge for the security of a debt, to be avoided on payment of the debt," and that "there is no good reason why a homestead entryman, whose good faith is otherwise apparent, may not mortgage his claim, before final certificate, to procure money with which to improve his land, or for any other purpose not intended to impeach his *bona fides*." This case affirmed the holding of Secretary Teller in *Larson v. Weisbecker*, Land Dec. Dept. Int. 422, in which it was held that the "mortgage was a mere

security for the money loaned, and the contract does not necessarily divert property from him, and was not a contract or agreement, within the meaning of the statute." The doctrine thus laid down in the land department was adopted and avowed by the supreme court of Colorado in *Wilcox v. John*, 40 Pac. 880, in which it was held that by the later, and, as it was thought, better-considered, cases, neither a mortgage nor a deed of trust is a grant or conveyance within the prohibitory clause of the statute.

And it was held in *Stewart v. Powers*, (Cal.) 33 Pac. 489, in a like case that "the mortgagor will be estopped from defeating by his own act the operation and enforcement of the lien appellants have attempted to create." And in *Orr v. Stewart*, 67 Cal. 275, 7 Pac. 693, which involved a mortgage of land under the homestead law, it was held that a mortgagor was estopped from defeating by his own act the enforcement of a lien he had attempted to create, and that the mortgage was not made void or voidable under the provisions of the homestead act. The same doctrine is fully affirmed in *Spiess v. Neuberg*, 71 Wis. 279, 397 N. W. 417, and in *Lang v. Morey*, (Minn.) 42 N. W. 88, in which it was stated in the syllabus that "a person making entry under the homestead laws of the United States may execute a valid mortgage upon land so entered prior to submitting final proof and receiving the final certificate." It was so held in *Fuller v. Hunt*, 48 Iowa, 163. It is also provided in section 2296 of the Revised Statutes of the United States, (upon homesteads) that "no lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." This section does not prohibit the borrowing

of money at the option of the homesteader. It prohibits the land being taken from him for the satisfaction of past indebtedness. It is intended as a protection to the homesteader, and not as a limitation upon his control over the land, in disposing of or borrowing money upon it.

It was said by the supreme court of Kansas in *Watson v. Voorhees*, 14 Kan. 329, by Judge Brewer, that: "The limitations were on the creditor, and not upon the debtor. That his deed passed a good title, and he could not thereafter avoid that deed by showing that the only consideration therefor was past indebtedness. If he could convey absolutely, so he could conditionally. He could use the land as security. He was in no wise limited or restricted in his power to dispose of the property." And that: "Having once appropriated it for that purpose, they may not thereafter deny such appropriation." The supreme court of Iowa have had this question before them, and have reached the same result. (*Nycum v. McAllister*, 33 Iowa, 374.)

We hold that the indenture executed by Frieze to the plaintiffs in error was not invalid as a violation of the provisions of the homestead act against either alienation, or the provision that the lands should not become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor, and that, as it was properly executed and recorded it constituted a lien upon the land, so far as Frieze and his wife were concerned. The averments of the intervening petition of the plaintiffs in error charged knowledge of the existence and consideration of the indenture upon Rachel Wright and her husband, and upon Duvall, and charged them with knowingly and fraudulently executing the warranty deed to Rachel Wright and the assignment of the mortgage from

Frieze to Duvall, and that the transactions between Frieze, the Wrights, and Duvall were knowingly and willfully fraudulent upon the part of all of them, and were intended to cheat and defraud the plaintiffs in error. The intervening petition therefore made out a good cause of action. The demurrer should have been overruled. Judgment will be entered in behalf of the plaintiffs in error. The judgment of the court below will be reversed, and for further proceedings.

All of the Justices concurring.