SELWAY, RESPONDENT, *v.* DAUT ET AL., APPELLANTS.

(No. 5,119.)

(Submitted April 11, 1923. Decided May 12, 1923.)

[215 Pac. 646.]

*Real Property—Mortgage Foreclosure—Public Lands—Desert Entries—Estoppel.*

Public Lands—Desert Entries—Mortgage Given Before Patent, Enforceable After Issuance.
   1. A mortgage upon a desert land entry given by the entryman as security for an antecedent debt before final proof made or patent issued is enforceable against the mortgagor after patent issues to him, the title thus subsequently acquired by the mortgagor inuring to the benefit of the mortgagee, under section 8255, Revised Codes of 1921, and the mortgagor being estopped to deny the validity of the mortgage.

Real Property — Mortgages — Bankruptcy — Lien Enforceable After Discharge of Bankrupt.
   2. A mortgage given and accepted in good faith for a present consideration is not affected by bankruptcy proceedings against the mortgagor, and the mortgage lien may be enforced after the discharge of the bankrupt.

*Appeal from District Court, Custer County; Stanley E. Felt, Judge.*

---

2. Discharge of debt in bankruptcy proceedings, as affecting equitable assignment to secure the same, see note in 43 L. R. A. (n. s.) 404.

[67 Mont. 262.]

ACTION by R. R. Selway against John Daut and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Loud & Leavitt* and *Messrs. Farr & Herrick,* for Appellants, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

Only upon a full compliance with the requirements of the law under which the entry is made does the entryman acquire a vested interest in the lands covered by the entry that can be sold, demised, sold under execution and, in the absence of statutory provisions, mortgaged. (*Newkirk* v. *Marshall,* 35 Kan. 77, 10 Pac. 571–575; *Christ* v. *Cosby,* 11 Okl. 635, 69 Pac. 885; *McCune* v. *Essig,* 122 Fed. 588, 59 C. C. A. 429; *Jarvis* v. *Hoffman,* 42 Cal. 314.)

Until an entryman has complied with all of the requirements of law under which the entry was made he has no such vested interest in his entry as will become a part of his estate. (32 Cyc. 834; *Gjerstadengen* v. *Van Dusen,* 7 N. D. 612, 66 Am. St. Rep. 679, 76 N. W. 233; *De Mars* v. *Hickey,* 13 Wyo. 371, 80 Pac. 821, 81 Pac. 705; *Hayes* v. *Wyatt,* 19 Idaho, 544, 34 L. R. A. (n. s.) 397, 115 Pac. 13.)

An entryman under the timber cultivation Act has no devisable estate where he dies before making final proof. (*Kilsey* v. *Eaton,* 45 Or. 116, 106 Am. St. Rep. 662, 76 Pac. 770; *Cooper* v. *Wilder,* 111 Cal. 191, 43 Pac. 591; *Walker* v. *Ehrsman,* 79 Neb. 775, 113 N. W. 218; *Harris* v. *Lyon,* 16 Ariz. 35, 140 Pac. 985; *Towner* v. *Rodgit,* 33 Wash. 153, 74 Pac. 50.)

An entryman may at any time relinquish his entry and thereupon another may file upon the same land. In such case any mortgage that may be given by the first entryman upon such land will be of no force and effect as against the second entryman. (32 Cyc. 1076; *Martin* v. *Olson,* 28 N. D. 317, L. R. A. 1915B, 681, 148 N. W. 834; *Markey* v. *Sturbett,* 62 Neb. 163, 86 N. W. 1056.) And this must be true for the reason that until he has fully complied with the requirements of the law relating to such entry, the entryman has no vested

interest therein or thereto. The rule must of necessity apply to all public lands, where the acquisition thereof depends upon the performance of conditions precedent by the entryman.

A discharge in bankruptcy releases the bankrupt from all of his provable debts except those specifically excepted by law. (7 C. J. 396, 397.) We submit, therefore, that the defendants, being released of the debt represented by the promissory note and there being no valid lien upon any property belonging to the defendants at that time or any property upon which a lien of a mortgage could rest, were released from the debt and that this action cannot be maintained.

*Messrs. Walker & Nelstead,* for Respondent, submitted a brief; *Mr. Sharpless Walker* argued the cause orally.

Where a mortgage is executed on land, the title to which is in the United States government, and the mortgagor thereafter acquires ownership of the property, the title so acquired inures to the mortgagee as security for the debt; and this is the rule even where the entry was not made until after the execution of the mortgage. (Sec. 8255, Rev. Codes 1921; *Norris* v. *Heald,* 12 Mont. 282, 33 Am. St. Rep. 581, 29 Pac. 1121; *Hafeman* v. *Gross,* 199 U. S. 342, 50 L. Ed. 220, 26 Sup. Ct. Rep. 80 [see, also, Rose's U. S. Notes]; *Stewart* v. *Powers,* 98 Cal. 514, 33 Pac. 486; *Wilcox* v. *John,* 21 Colo. 367, 52 Am. St. Rep. 246, 40 Pac. 880; *Reasoner* v. *Markley,* 25 Kan. 635; *Lang* v. *Morey,* 40 Minn. 396, 42 N. W. 88; *Gunsch* v. *Urban Merc. Co.,* 35 N. D. 390, 160 N. W. 69; *Forgy* v. *Merryman,* 14 Neb. 513, 16 N. W. 836; *Worthington* v. *Tipton Domestic Co.,* 24 N. M. 89, 172 Pac. 1048; *Pittsburgh Mtg. Inv. Co.* v. *Snead,* 60 Okl. 98, 159 Pac. 515; *Weber* v. *Laidler,* 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 400; *Spies* v. *Newberg,* 71 Wis. 279, 37 N. W. 417.)

The fact that the defendants after executing in favor of the plaintiff a mortgage on government land, theretofore filed upon by them, were adjudged bankrupts, and were thereafter,

before the issuance of patent, duly discharged, does not release the real estate security from liability for the debt, but merely relieves the bankrupts from further personal liability. (*Wills* v. *Wood Lumber & Mill Co.*, 29 Cal. App. 97, 154 Pac. 613; *Oliphant* v. *Eckerley*, 36 Ark. 69; *Copper Belle Min. Co.* v. *Costello*, 12 Ariz. 318, 100 Pac. 807; *Mallin* v. *Wenham*, 209 Ill. 252, 101 Am. St. Rep. 233, 70 N. E. 564; *Bisby* v. *Walker*, 185 Iowa, 743, 169 N. W. 467; *Haggerty* v. *Byrne*, 75 Ind. 499; *Prentiss* v. *Richardson's Estate*, 118 Mich. 259, 76 N. W. 381; *Adam* v. *McClintock*, 21 N. D. 483, 131 N. W. 394; 3 R. C. L. 320, sec. 142.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action to foreclose a real estate mortgage. The complaint is in usual form, save that a reformation of the description of the lands is sought. The execution of the note and mortgage is admitted by the defendants John and Lillian Daut, but they deny that there is anything due thereon. It appears that at the time of the execution of the note and mortgage, November 13, 1909, the lands mortgaged comprised desert land entries made by the Dauts under Act of Congress. (Act of March 3, 1877, 19 Stat. 377, amended Act of March 3, 1891; 8 Fed. Stats. Ann., p. 692 (U. S. Comp. Stats., secs. 4674 *et seq.*) The consideration was $12,200 cash paid by the plaintiff to the First National Bank of Miles City on account of the Dauts, for their use and benefit. At the time these entries were respectively made, December 5, 1902, and January 17, 1903, the land comprised a portion of the unsurveyed public domain, and there is no question but that the land covered by the mortgage comprised all of both entries. The subsequent extension of the public survey changed the description as made in the original entries in some particulars; however, we need not stop to explain, as it is of no importance to this decision. Suffice it to say: After various delays and extensions, final proofs were made and patent issued to Lillian Daut for the lands embraced in her entry

July 16, 1916, and to John Daut for the lands covered by his entry September 21, 1918. On December 8, 1910, John Daut filed a petition in voluntary bankruptcy under the National Bankruptcy Act, and March 8, 1911, Lillian E. Daut filed a like petition. Both included the note in suit in the schedules of indebtedness accompanying their respective petitions. The plaintiff filed proof of his claim in bankruptcy, based upon such indebtedness, with the trustee in bankruptcy of their respective estates; but no amount whatsoever was received or paid thereon in the bankruptcy proceedings. Neither of the desert land entries was listed as assets by the Dauts in their petitions in bankruptcy. On June 12, 1911, Lillian Daut received her final discharge in bankruptcy, and on February 19, 1912, John Daut secured like relief. This action was instituted September 21, 1916. The Dauts seek to avoid the mortgage by reason of the fact that neither final proofs had been made nor patents issued for the lands at the time of the execution of the mortgage; and because of their discharge in bankruptcy absolving them of the necessity of paying the debt. The cause was tried before the court without a jury on May 11, 1921, and thereafter findings of fact and conclusions of law were made and filed by the court in favor of the plaintiff, upon which judgment was regularly entered December 21, 1921, reforming the description of the lands mortgaged, and decreeing foreclosure. The appeal is from the judgment.

In our opinion there is involved but a single question decisive of this appeal, *viz.*: Is a mortgage upon desert land [1] entries given by the entrymen as security for an antecedent debt before final proof made or patent issued enforceable against the mortgagors after patent has been issued to them?

Section 8255, Revised Codes of 1921, provides: "Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt, in like manner as if acquired before the execution." The language of the statute is plain and controlling, unless it may be

properly held inapplicable to land the legal title to which is vested in the United States government and to which the mortgagor has only a contingent interest at the time of the execution of the mortgage. There does not appear to be any good or sufficient reason why government lands should be excepted, although difference in opinion has been expressed by the courts. The better-reasoned cases, and those which we believe controlling, place government lands in the same category with other lands. (*Norris* v. *Heald,* 12 Mont. 282, 33 Am. St. Rep. 581, 29 Pac. 1121; *Hafemann* v. *Gross,* 199 U. S. 342, 50 L. Ed. 220, 26 Sup. Ct. Rep. 80 [see, also, Rose's U. S. Notes]; *Stewart* v. *Powers,* 98 Cal. 514, 33 Pac. 486; *Kirkaldie* v. *Larrabee,* 31 Cal. 455, 89 Am. Dec. 205; *Orr* v. *Stewart,* 67 Cal. 275, 7 Pac. 693; *Wilcox* v. *John,* 21 Colo. 367, 52 Am. St. Rep. 246, 40 Pac. 880; *Reasoner* v. *Markley,* 25 Kan. 635; *Gunsch* v. *Urban Merc. Co.,* 35 N. D. 390, 160 N. W. 69; *Adam* v. *McClintock,* 21 N. D. 483, 131 N. W. 394 (a case quite similar in facts); *Forgy* v. *Merryman,* 14 Neb. 513, 16 N. W. 836; *Worthington* v. *Tipton Domestic Co.,* 24 N. M. 89, 172 Pac. 1048; *Pittsburg Mortgage Inv. Co.* v. *Mead,* 60 Okl. 98, 159 Pac. 515; *Stark* v. *Duvall,* 7 Okl. 213, 54 Pac. 453; *Weber* v. *Laidler,* 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 400.)

There is no express prohibition in the Act, *supra,* either against alienation or mortgaging of the lands covered by desert entry (*United States* v. *Hammers,* 221 U. S. 220, 55 L. Ed. 710, 31 Sup. Ct. Rep. 593 [see, also, Rose's U. S. Notes]), and upon satisfactory proof of reclamation and acreage payment as provided, the entryman is entitled to a patent. Ownership was potentially in existence, for the entryman had actually contracted with the government for the purchase of the particular tract of land. The entryman has an inchoate right to the land, which is property, and can be defeated only by his failure to perform the conditions imposed.

"Any interest in real property which is capable of being transferred may be mortgaged." (Sec. 8262, Rev. Codes

1921.) A desert land entry is distinct interest in real estate, a property right capable of transfer; and there is no prohibition against transfer. The right is based on statute, and confers upon the entryman exclusive possession of the land and the right to complete title upon performance of the prescribed conditions. The entryman may sell his improvements on the land, and even the right of entry itself, by relinquishment, or assignment, so as to enable the purchaser to obtain title from the government. Such possessory rights are capable of transfer and furnish a valid consideration. (*Hills* v. *Johnson,* 52 Mont. 65, 156 Pac. 122; *McConnell* v. *Blackley,* 66 Mont. 510, 214 Pac. 64.)

The Pre-emption Act (September 4, 1841; secs. 2257–2288, Rev. Stats. U. S.) differed in its provisions from the Desert Act as respects the right of alienation, in that it was therein expressly provided that "All assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void." (Sec. 2263.)

Many decisions of the courts are recorded as to the validity of a mortgage on pre-emption claims, which are correctly summarized in Ruling Case Law, in language better than we can employ, as follows: "The authorities under the pre-emption laws as to the right of a pre-emptor to mortgage his claim have not been uniform. Earlier decisions are to the effect that an outstanding mortgage given by a pre-emptor on the lands embraced in his filing defeated his right of entry, on the ground that such mortgage was a contract or agreement by which title to the lands 'might' inure to some other person than himself, contrary to the provisions of the statutes prohibiting alienations of such right. But by later decisions it is held that the mere possibility of a title resulting for the benefit of another person, as in the case of a mortgage, is not sufficient to prevent the pre-emptor from obtaining patent. And so it is now the general rule that a pre-emptor of public land may, before making final proof, and obtaining a receiver's certificate or a patent, mortgage the land, or, acting in good

faith, convey it in trust. Such an instrument is not a prohibited 'grant' or 'conveyance' within the meaning of the law; and it is valid against the mortgagor and those claiming under him though given prior to the issue of the patent, if title is subsequently acquired. In such a case a subsequently acquired title inures to the benefit of the mortgagee, and becomes a lien on the land.'' (22 R. C. L., sec. 74, p. 325.) The same rule should be more certain of application in the case of desert entries.

In *Hafemann* v. *Gross, supra,* the supreme court of the United States, through Mr. Justice Brewer, said: "There has been some division in the courts upon the question. In *Brewster* v. *Madden,* 15 Kan. 249, the supreme court of that state, in an opinion delivered by the writer of this, held that a mortgage given by a pre-emptor prior to the entry of the lands, was void, reaching this conclusion largely on the proposition that at the time the pre-emption Act was passed (1841), mortgages always in form conveyances were then regarded by the profession generally as conditional alienations. To like effect were the early rulings of the supreme court of Minnesota (*McCue* v. *Smith,* 9 Minn. 252 [86 Am. Dec. 100]; *Woodbury* v. *Dorman,* 15 Minn. 338), though these rulings were subsequently distinctly overruled by the. same court. (*Jones* v. *Tainter,* 15 Minn. 512; *Lang* v. *Morey,* 40 Minn. 396 [12 Am. St. Rep. 748, 42 N. W. 88].) *Bass* v. *Buker,* 6 Mont. 442 [12 Pac. 922], deciding the same way, was also overruled in *Norris* v. *Heald, supra.* The large majority of state decisions follow these later rulings. (See, in case of pre-emptions, *Wilcox* v. *John,* 21 Colo. 367. [52 Am. St. Rep. 246, 40 Pac. 880]; *Christy* v. *Dana,* 34 Cal. 548 [73 Am. Dec. 470]; *Christy* v. *Dana,* 42 Cal. 174; *Camp* v. *Grider,* 62 Cal. 20; and in reference to homesteads, *Fuller* v. *Hunt,* 48 Iowa, 163; *Dickerson* v. *Bridges,* 147 Mo. 235 [48 S. W. 825]; *Weber* v. *Laidler,* 26 Wash. 144 [90 Am. St. Rep. 726, 66 Pac. 400]; *Spiess* v. *Neuberg,* 71 Wis. 279 [5 Am. St. Rep. 211, 37 N. W. 417]; *Kirkaldie* v. *Larrabee,* 31 Cal. 456 [89 Am. Dec. 205];

*Orr* v. *Stewart,* 67 Cal. 275 [7 Pac. 693]; *Stark* v. *Duvall,* 7 Okl. 213 [54 Pac. 453].)"

In *Weber* v. *Laidler, supra,* after citing many of the cases holding to this doctrine, it is said: "The above cases proceed upon the theory that the exemption provided by the statute is meant to be a protection to the settler against a sale of the land involuntarily under execution, but that it does not prevent him from borrowing money, and voluntarily creating a lien by way of mortgage to secure the same."

In *Whitney* v. *Buckman,* 13 Cal. 536, which involved a mortgage upon a pre-emption entry, the court said: "The mortgage does not pretend to transfer to the mortgagee the right to a pre-emption; this is not assignable, but the possession of public land, whether taken for the purpose of getting a pre-emption right, or any other purpose, may be mortgaged, or the land itself; and if the mortgagee gets no title through the mortgage, this is not an objection to be raised by the man who makes it." See, also, *Stewart* v. *Powers,* 98 Cal. 514, 33 Pac. 486.

In *Orr* v. *Stewart, supra,* the court said: "It is also well settled that when a mortgage of land is made, purporting to convey the land in fee, any title afterwards acquired by the mortgagor will feed the mortgage and inure to the benefit of the mortgagee [citing cases]; and this is so though the title when the mortgage was made was in the government and was afterwards acquired by patent from the government."

From a review of the authorities, we are of the opinion that an ordinary mortgage executed by a desert land entryman in good faith and for value prior to the time of making final proofs, or patent issued, is enforceable after title has become vested in the mortgagor.

To insure good faith and fair dealing, the mortgagor is precluded from denying a lien which he has attempted to create or defeating its enforcement against the property upon which he has placed it. The defendants cannot deny the validity of their mortgage, both by reason of estoppel from the covenants

thereof, and by the statutes respecting after-acquired title. (*Gunsch* v. *Urban Merc. Co., supra.*)

Equity considers as done that which the mortgagor has distinctly agreed to do, and is in consequence bound to do. Equity treats the mortgage as already attaching to such property in fulfillment of the contract. (Sec. 153, Jones on Mortgages, 7th ed.)

In this case it clearly appears that the entrymen were in undisputed possession and right of possession of the land embraced in their respective entries at the time of the execution of the mortgage, and title was to become vested in them upon compliance with the terms imposed by the government. Therefore it appears plain that the defendants were possessed of such a property interest *in esse* as was subject to mortgage (*Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503; *Hackney* v. *Birely, ante,* p. 155. 215 Pac. 642), and that after-acquired title vested in the entrymen, inured to the benefit of the mortgagee.

Since the lien of the mortgage is valid and enforceable, [2] consideration of the effect of the bankruptcy proceedings becomes of little importance; as a mortgage appearing to have been given and accepted in good faith for a present consideration is not affected by proceedings under the Bankruptcy Act (sec. 67d, Bankruptcy Act of July 1, 1898, 30 Stat. L. 564; Fed. Stats. Ann., p. 1115 [U. S. Comp. Stats., sec. 9651]; Black on Bankruptcy, 3d ed., sec. 366; Eastman on Bankruptcy, p. 234; *Security Bank* v. *Scott,* 3 Cal. App. 687, 86 Pac. 903), and valid mortgage liens may be enforced after the discharge of the bankrupt (Loveland on Bankruptcy, 4th ed., sec. 476; *Wills* v. *Wood Lumber & Mill Co.,* 29 Cal. App. 97, 154 Pac. 613; *Bridge* v. *Kedon,* 163 Cal. 493, 43 L. R. A. (n. s.) 404, 126 Pac. 149).

The real estate security is not released from liability for the debt by a discharge of the debtor in bankruptcy, although he is thereby relieved from further personal liability. (Sec. 1 (12), Bankruptcy Act (U. S. Comp. Stats., sec. 9585);

Black on Bankruptcy, 3d ed., sec. 710; *Wills* v. *Wood Lumber & Mill Co., supra; Adam* v. *McClintock, supra; Oliphant* v. *Eckerley,* 36 Ark. 69.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

