## LOHMAN STATE BANK, RESPONDENT, *v.* GRIM, APPEL-
LANT.

### (No. 5,367.)

(Submitted January 8, 1924.  Decided January 29, 1924.)

[222 Pac. 1052.]

*Public Lands—Homesteads—Mortgage Before Patent—Valid-
ity—After-acquired Title Inures to Mortgagee—Estoppel.*

Homesteads—Mortgage Before Patent Valid.
  1.  While under section 2296, United States Revised Statutes, a
  creditor cannot in any manner acquire an involuntary lien upon land
  entered as a homestead to secure satisfaction of a debt contracted
  by the homesteader before issuance of patent, the statute does not
  prevent the entryman from giving a mortgage thereon in good faith
  to secure a legitimate debt before patent.

Same—Title Acquired After Mortgage Inures to Mortgagee.
  2.  The rule declared by section 8255, Revised Codes of 1921, that
  title acquired by the mortgagor subsequent to the execution of the
  mortgage inures to the mortgagee as security for the debt, applies
  to land, title to which at the time the mortgage was given was in
  the federal government and was subsequently acquired therefrom
  under the homestead laws.

Same—Mortgages—After-acquired Title Inures to Benefit of Mortgagee—
Estoppel.
  3.  A homestead entryman and his wife gave a promissory note and
  a mortgage on the land to secure it.  The husband abandoned the
  homestead and the parties were divorced, whereupon the divorced
  wife entered the land as a homestead and received patent.  In an
  action by the indorsee of the note to recover thereon and to fore-
  close the mortgage, *held*, under the rule above (par. 2), that the
  subsequently acquired title by the patentee inured to the benefit of
  plaintiff and that defendant was estopped to deny the existence of
  the lien which she created when she executed the mortgage jointly
  with her then husband.

*Appeal from District Court, Blaine County; Charles A. Rose,
Judge.*

ACTION by the Lohman State Bank, against Rosie Grim.
Judgment for plaintiff and defendant appeals.  Affirmed.

Cause submitted on brief of Counsel for Appellant.

  1.  Validity of mortgage on public lands executed by claimant under
homestead acts prior to patent of final proof, see notes in 9 **Ann. Cas.**
934; **6 L. R. A.** (n. s.) 934; **L. R. A.** 1915B, 681.

[69 Mont. 444.]

*Mr. John F. Duffy,* for Appellant.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

A motion to dismiss the appeal, stating several grounds, has been filed by plaintiff, respondent here. We are not impressed with any of the reasons assigned. The motion is overruled.

The facts in this case as we learn them from the pleadings are that in 1916 Thomas F. Grim and Rosie, his wife, with their children, were living upon a tract of land in Blaine County which Grim had entered as a homestead. For the purpose of purchasing a team of horses Grim in December of that year borrowed money from one Prosser. Grim and wife executed and delivered to Prosser a promissory note for the amount borrowed, and to secure payment of the same executed and delivered to him a mortgage purporting to convey the land which Grim had entered as a homestead. The note and mortgage bear date December 18, 1916. The mortgage contained a covenant of warranty as well as one of seisin.

The makers of the note having failed to pay it according to its tenor, the plaintiff, to whom Prosser had indorsed it before maturity, began suit to obtain judgment upon it and to foreclose the mortgage. Thomas F. Grim defaulted. Rosie Grim answered, setting up two defenses, the first of which is not material to this inquiry. In the second she alleged that when she signed the note and mortgage the land was held as a homestead by Thomas F. Grim who did not perfect title thereto, but afterward at a date unknown to her abandoned the same and relinquished it to the United States; that on September 20, 1920, she and her husband were divorced and the custody of their seven minor children was given to her; that about the month of November, 1920, and while maintaining a home for herself and children she settled upon the land described in the mortgage and, with other lands, entered the same as a homestead in her own name; that she cultivated and

improved the same, made proof thereon, and in due time received patent therefor from the United States. She prayed that the mortgage be declared void and plaintiff be restrained from asserting any right thereunder.

The plaintiff demurred to each defense. The demurrer was overruled as to the first defense, and sustained as to the second. The case went to trial upon the first defense, resulting in a judgment for plaintiff upon the note and for a foreclosure of the mortgage. The defendant has appealed from the judgment.

The question for decision is: Did the court err in sustaining the demurrer to the second defense?

In *First State Bank* v. *Durand, ante,* p. 184, 222 Pac. [1] 434, we held that an entryman holding land under the homestead laws of the United States may give a valid mortgage thereon even when he has not proceeded far enough to be entitled to a final certificate. The act of the entryman in giving a mortgage in good faith to secure a legitimate debt is not deemed an alienation within the meaning of and is not forbidden by the spirit of the federal statute which provides that land acquired under the homestead laws shall not in any event become liable to the satisfaction of any debt contracted prior to the issuing of patent therefor. (U. S. Rev. Stats., sec. 2296; 8 Fed. Stats. Ann., 2d ed., p. 575; U. S. Comp. Stats., sec. 4551.) This view is sustained by the nearly unanimous voice of the courts. (*Stark* v. *Morgan,* 73 Kan. 453, 9 Ann. Cas. 930, and note, 6 L. R. A. (n. s.) 934, and note, 85 Pac. 567; *Weber* v. *Laidler,* 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 400; *Kirkaldie* v. *Larrabee,* 31 Cal. 455, 89 Am. Dec. 205; *Adam* v. *McClintock,* 21 N. D. 483, 490, 131 N. W. 394; *Fuller* v. *Hunt,* 48 Iowa, 163; *Lang* v. *Morey,* 40 Minn. 396, 12 Am. St. Rep. 748, 42 N. W. 88; *Dickerson* v. *Bridges,* 147 Mo. 235, 48 S. W. 825; *Blanchard* v. *Jamison,* 14 Neb. 244, 5 N. W. 212; *Stark* v. *Duvall,* 7 Okl. 213, 54 Pac. 453; *Spiess* v. *Neuberg,* 71 Wis. 279, 5 Am. St. Rep. 211, 37 N. W. 417.) As to pre-emption claims: *Norris* v. *Heald,*

12 Mont. 282, 33 Am. St. Rep. 581, 29 Pac. 1121; *Wilcox* v. *John,* 21 Colo. 367, 52 Am. St. Rep. 246, 40 Pac. 880. Yet while the entryman may encumber the land voluntarily to the extent of his rights therein, within the limitations above mentioned, the statute prevents a creditor from in any manner acquiring an involuntary lien upon the land to secure satisfaction of a debt contracted by the homesteader before patent issues. (*Mettler* v. *Rocky Mountain Security Co.,* 68 Mont. 406, 219 Pac. 243; *Keller* v. *Flanagan,* 66 Mont. 144, 213 Pac. 222; *First State Bank* v. *Bottineau County Bank,* 56 Mont. 363, 8 A. L. R. 631, 185 Pac. 162.)

That the homestead entry of Thomas F. Grim was an interest in realty capable of being transferred cannot be denied. Ownership of the land was potentially in existence. Grim, the entryman, had an inchoate right capable of ripening into full title upon performance by him of the statutory requirements. He was entitled to possession of the land itself, a right of some value. This he might sell with the improvements on the land. He might also sell his right of entry by relinquishment. (See *Hills* v. *Johnson,* 52 Mont. 65, 156 Pac. 122; *Selway* v. *Daut,* 67 Mont. 262, 215 Pac. 646.) Rosie Grim had a contingent interest in the entry. If it ripened into full title she would have a dower interest in the land patented. If her husband had died while the entry was pending she would have been entitled to the possession of the land and might have obtained patent therefor under the provisions of section 2291 of the United States Revised Statutes (8 Fed. Stats. Ann., 2d ed., p. 557; U. S. Comp. Stats., sec. 4532). Premising, then, as we must, that the mortgage was [2, 3] valid when made we come to a consideration of section 8255, Revised Codes of 1921, which provides: "Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt, in like manner as if acquired before the execution." That this statute is applicable to a case like the present seems clear. The general rule is that a subsequently acquired title inures

to the benefit of the mortgagee, although at the time the mortgage is given the title is in the United States and is subsequently acquired therefrom under the homestead laws. (See note, L. R. A. 1918B, p. 768.) The text is supported by the following authorities: *Kirkaldie* v. *Larrabee, Blanchard* v. *Jamison, Weber* v. *Laidler, Adam* v. *McClintock, Stark* v. *Duvall, Spiess* v. *Neuberg,* above mentioned; *Christy* v. *Dana,* 34 Cal. 548; *Stewart* v. *Powers,* 98 Cal. 514, 33 Pac. 486; *Selway* v. *Daut, supra.*

The fact that Grim relinquished his entry does not avail this appealing defendant. As illustrative: If Grim had relinquished his homestead entry and afterward obtained patent under the Desert Act, title would have inured to the mortgagee. Or if Grim had been a mere squatter upon the public land, afterward obtaining title under the Homestead Act, a like result would be reached. And Rosie Grim, cosigner of the note and mortgage, is in no better position.

In *Kirkaldie* v. *Larrabee, supra,* the facts were that Larrabee and his wife, who were simply in the possession of a tract of public land, mortgaged it to secure a promissory note of even date. After the execution of the mortgage Larrabee located the land as a homestead under the Act of Congress. Action was brought to obtain judgment on the note and to foreclose the mortgage. The answer set up as a special defense that after making the note and mortgage Larrabee had made an entry of the mortgaged premises as a homestead under the federal homestead law. The court, speaking through Judge Sawyer, said: "Had the deed been an absolute conveyance in fee instead of a mortgage in fee, any subsequently acquired title, under our statute concerning conveyances, would have inured to the benefit of the plaintiff. (Sec. 33.) The fact that the title subsequently comes from the United States would make no difference. * * * The title will pass not merely in consequence of the enforcement of the payment of a debt by the ordinary process of the courts, but in consequence of the voluntary contract of the

party in executing the mortgage. The mortgagor of the fee is estopped from denying the existence of the lien which he has attempted to create, and from defeating by his own act the enforcement of the lien against the property thus mortgaged. [Citing cases.]''

In *Weber* v. *Laidler, supra,* the answer averred that the mortgage was executed before actual entry was made and it was suggested that the mortgagors had no interest whatever which could have been mortgaged. After citing the case of *Kirkaldie* v. *Larrabee,* the supreme court of Washington said: ''As heretofore stated, if the ordinary rule of estoppel is not invoked here, it must be because it is prohibited by the federal statute. But, since we have seen that the statute is not intended as a prohibition, the general doctrine of estoppel must apply to this as to any other case where lands are mortgaged by one not having title, but who afterward acquires title. When a person contracts an obligation to another, and grants a mortgage on property of which he is not then the owner, the mortgage is valid if the debtor ever afterwards acquires the ownership of the property by any right. (2 Herman on Estoppel, sec. 895, p. 1018.)''

Upon the facts, *William* v. *Sherman,* 36 Idaho, 494, 212 Pac. 971, is not applicable to the present case. *Hebert* v. *Brown* (C. C.), 65 Fed. 2, does not undertake to consider the question of estoppel. Neither was any statute invoked in that case.

It follows that the action of the court in sustaining the demurrer was correct.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.